MARTHA P. CHASE, Administratrix,

*vs.*

MAINE CENTRAL RAILROAD COMPANY.

Sagadahoc.    Opinion January 19, 1885.

*Railroads. Crossing. Negligence. Evidence.*

In an action for personal injuries received by a collision at a railroad crossing, evidence will not be received to show the general character and habits of the traveler for carefulness, as bearing upon the question of due care on

his part, though the injuries occasioned death before he could tell how the accident happened, and no one saw him at the time of the collision.

In such a case the natural instinct for self-preservation does not afford proof of the absence of contributory negligence on the part of the traveler. It may give character or force to facts already proved, but it does not of itself add or create proof.

ON exceptions, and motion to set aside the verdict and for a new trial.

An action by the administratrix of Edwin F. Chase, for personal injuries received in a collision with a train of cars controlled by the servants of the defendant at a private crossing in Richmond, February 24, 1882.

The writ was dated July 3, 1882. The plea was the general issue. The verdict was for three thousand seven hundred eight dollars and thirty-three cents.

The opinion states the material facts.

*J. W. Spaulding* and *F. J. Buker*, for the plaintiff.

The evidence tending to show that the deceased was a cautious man was properly admitted in this case, because his acts were not seen by any one. The precise act or omission was not shown by any witness. In most of the cases cited by the counsel, where evidence showing the habits as to care or the want of it was rejected, the reports show, that there was testimony of witnesses who saw the act, and in no one of the cases does the report disclose as an affirmative fact that the act itself was not witnessed,— not seen by any witness who testified in the case. Where the act is shown it speaks for itself, and evidence of character or reputation for care will not and ought not to be received to contradict the unmistakable language of the act itself. When the act is not seen then resort must be had to the next best evidence.

The evidence objected to was admitted because it was the best and only evidence bearing upon that branch of the case. It is only to be resorted to when that is the case. "When the precise act or omission of a defendant is proved, the question whether it is actionable negligence is to be decided by the character of that act or omission, and not by the character for care and caution that the defendant may sustain." *Tenney* v. *Tuttle,* 1 Allen, 185.

But when the precise act or omission is not shown then you must go to the circumstances, and here character and reputation afford no little nor uncertain light.    It rests upon the rule that, "The habit of an individual being proved, he is presumed to act in a particular case in accordance with that habit."  28 Alb. Law J. 327, citing as illustrations:  *Eureka Ins. Co.* v. *Robinson,* 56 Pa. St. 256; *Hine* v. *Pomeroy,* 39 Vt. 211; *Vaughan* v. *Railroad Co.* 63 N. C. 11; *Kershaw* v. *Wright,* 115 Mass. 361; *Meighen* v. *Bank,* 25 Pa. St. 288; *Smith* v. *Clark,* 12 Iowa, 32; *Ashe* v. *DeRossett,* 8 Jones (L.) 240; *Shove* v. *Wiley,* 18 Pick. 558; *Union Bank* v. *Stone,* 50 Maine, 595; *Cookendorfer* v. *Preston,* 4 How. 317.

In *Thomas* v. *Del. &c. R. R. Co.* 12 The Reporter, 739, WALLACE, J., said that "the natural instincts of self-preservation in the case of a sober and prudent man stands in the place of positive evidence.  *Johnson* v. *Hudson River R. R. Co.* 20 N. Y. 65."  See, also, *Shaw* v. *Jewett,* 6 Am. & Eng. R. R. Cas. 113 and authorities cited.

*Drummond and Drummond,* for the defendant, cited upon the questions considered in the opinion:  *Allyn* v. *B. & A. R. R. Co.* 105 Mass. 77; *Dunham* v. *Rackliff,* 71 Maine, 345; *Robinson* v. *F. & W. R. R. Co.* 7 Gray, 92; *Tenney* v. *Tuttle,* 1 Allen, 185; 1 Greenl. Ev. § 84; *Gahagan* v. *B. & L. R. R. Co.* 1 Allen, 187; *Wentworth* v. *Smith,* 44 N. H. 419; *Morris* v. *East Haven,* 41 Conn. 252; Abbott, Trial Ev. 597; 2 Thompson, Neg. 1179; *Gay* v. *Winter,* 34 Cal. 153.

PETERS, C. J.  The intestate's sleigh collided with a train at a railroad crossing.  He thereby received an injury and very soon afterwards died.  He never was conscious enough after the injury to tell how the accident happened.  No one was with him at the time.  No one saw him at the moment of the collision. As evidence that he could not have been guilty of any negligence which contributed to the accident, witnesses who had been his neighbors for some time were permitted to testify to their opinion of his general character for carefulness.  We think this was overstepping the limit allowed to collateral evidence in this State.

We dare not abide by it. Our belief is that such a rule would be fraught with much more evil than good.

It was said in *Eaton* v. *Telegraph Co.* 68 Maine, 63, 67, that "the best authorities clearly sustain the doctrine that the fact of a person having once or many times in his life done a particular act in a particular way, does not prove that he has done the same thing in the same way upon another and different occasion." See cases there cited. If in civil cases a person's character proves carefulness in one instance, why not in all instances? Where and how can a true line of distinction be drawn? If by such proof a plaintiff can be shown to have been careful in one case, why not by the same mode of proof show that a person acted carefully or carelessly in any case — in all cases? In many litigations, under such a test, there would arise a wager of character which would as unfairly settle the dispute as did formerly the wager of battle. If the intestate's general character for care be in issue, why not that of the engineer and of every man concerned in the management of the train? If a man who is customarily careful were always so, there would be reason for admitting the evidence. But the issue is, whether the intestate was careful in this particular instance,— a fact to be, either directly or circumstantially, affirmatively proved. The objection to such a method of proof is augmented by the fact that the testimony consisted of merely the opinions of neighbors,— one generality proving another. But upon what tests or what definition of care are their opinions grounded? The question was not whether the intestate managed his farm, or his shop, or his horses, carefully, but whether he used due care in attempting to cross a railroad track at the very moment when a regular train was due at the crossing. The law imperatively demands that a traveler look and listen before crossing if there is any opportunity to do so. What did these farmer witnesses know about the intestate's habitual care in that respect. It is not a ground for the admission of this evidence that the plaintiff can produce no other. It is neither of primary nor secondary importance,— it is not evidence at all. 1 Greenl. Ev. § 84.

The question is not a new one in this court. The sole question considered in the case of *Scott* v. *Hale*, 16 Maine, 326 was, whether similar evidence was admissible. The defendant there was sued for damages for the loss of a building by fire, the allegation being that the fire was occasioned by the negligence of the defendant. In that case the same arguments were presented as here. The evidence received in that case came nearer the point at issue than the evidence here. At the trial the court permitted witnesses to testify that the defendant was very careful with fire, and that they never discovered any carelessness in him about taking care of his fires during the time they were at his house just before the event complained of. It was held that the evidence was inadmissible, and the verdict was set aside. The same rule has been maintained in subsequent cases. *Lawrence* v. *Mt. Vernon*, 35 Maine, 100 ; *Dunham* v. *Rackliff*, 71 Maine, 345. The case of *Morris* v. *East Haven*, 41 Conn. 252, cited by the defendant, is an especially pertinent and sustaining decision. See *Baldwin* v. *Railroad*, 4 Gray, 333.

Exception is taken to the judge charging the jury to take into consideration, upon the question of the intestate's care upon the occasion of the injury, the knowledge of the jury " of the habits of thought and mind, and the natural instincts of men," to preserve themselves from injury. Following, as no doubt it did, an impressive argument of counsel that a man would not be so unwise as to rush into danger when it was avoidable,— we are inclined to think the idea intended was presented to the jury too prominently.

Such a consideration is by no means evidence, for if it were so a jury might accept it as conclusive evidence. It is no more than an accompaniment or an appurtenance of evidence. It may have some influence upon the interpretation of facts affirmatively presented. It pertains, as said by defendant's counsel, to those natural laws in connection with which all evidence may be weighed. It belongs to the class of slight presumptions, described by Mr. Best, which, " taken singly, do not either constitute proof or shift the burden of proof." 1 Best, Ev. § 319. It may give character or force to facts already proved. But it

does not of itself add or create proof.   It is rather an argument, or mode of reasoning upon evidence.   Practically speaking, it is no more than that a person's motive may be taken into consideration in relation to any act done by such person.   It would be reasonable to say that a man would be naturally stimulated to avoid rather than to rush into dangerous situations.   He would be impelled by strong motives to do so.   But this would apply to the engineer or fireman or brakeman on a train as well as to the traveler, although perhaps not generally in the same degree.

But the weakness of the plaintiff's position lies in the fact that this motive for personal safety does not operate upon the minds of men until they can clearly see that they are endangered by their carelessness.   It does not keep them from careless acts. The danger is often not seen until too late to be extricated from it. The careless act usually precedes the moment when the natural instincts for self-preservation are aroused.   And a man is quite prone to take risks.   And a man is careless to take a risk in crossing a railroad in advance of a coming train.   We all know that he often does it.   There is no doubt that the intestate was impelled by all his instincts and love of life to save himself when he saw that the horrible danger was upon him.   But how the unfortunate man got into the awful situation no one seems to know and no evidence explains to us.   It seems to be an unexplained catastrophe.

Other questions are discussed which may be properly passed. A good deal of discussion is elicited by the ruling that the plaintiff's intestate had a right of passage across the railroad.   Perhaps the point may be avoided upon the ground of a license or permission from the defendant company to the public, as was the case in *Barry* v. *Railroad,* 92 N. Y. 289.

*Exceptions sustained.*


WALTON, VIRGIN, LIBBEY, FOSTER and HASKELL, JJ., concurred.