## Potts *versus* Dunlap.

1. An agreement for the purchase of stocks on margin, without any intention of delivering or receiving the stock, is a gambling contract, which will not support an action between the parties thereto.

2. Where, however, one advances money at the request of another to purchase stock for him and the latter fails to pay the balance of the purchase money and take up the stock, in consequence of which the stock is sold at a loss to the first party, he is entitled to recover from the other the amount of the loss.

3. A., at the request of B., furnished a broker money to purchase stock for the exclusive benefit of B. The stock declined in value, and, B. being unable to take up the stock, it was sold at a loss to A. In a suit by A. against B. to recover this loss, *Held*:

    (1.) That evidence to show that A. had purchased stocks for others under contracts which the law would regard as gambling, was properly excluded.

14 OUTERBRIDGE—14

(2.) That evidence of the intention of the parties in regard to this transaction, outside of their acts and declarations, was also properly excluded.

(3.) That the question whether the above transaction was a gambling one, was properly left to the jury.

May 18th, 1885. Before MERCUR, C. J., GORDON, TRUNKEY, GREEN, and CLARK, JJ. PAXSON and STERRETT, JJ., absent.

ERROR to the Court of Common Pleas of *Lancaster county :* Of July Term 1884, No. 164.

Assumpsit, by A. J. Dunlap against David H. Potts, to recover for money laid out and expended by the plaintiff for the defendant in the purchase and sale of fifty shares of Reading Railroad stock.

On the trial, before PATTERSON, J., the following facts appeared: On February 19th, 1881, plaintiff and defendant, both of whom reside in the city of Lancaster, had a conversation in regard to railroad stocks, and on defendant stating that he had lost all his money by dealing in stocks, plaintiff offered to assist him.

On February 21st, defendant sent a note to plaintiff telling him that he had valuable information as to Reading Railroad stock, and asking him to buy fifty shares for him. Plaintiff at first refused to do this, but finally went to a broker's office and ordered the fifty shares of said stock to be bought for the defendant; plaintiff's account was charged by the broker for the same and the stock was purchased by the Philadelphia correspondent of the broker, although it did not appear that the certificate was ever delivered to plaintiff or to his broker in Lancaster.

Plaintiff informed defendant of the purchase and the price, and the latter said that it was all right. The stock declined in value and the plaintiff advised the defendant to sell. Defendant replied: "For God's sake don't sell my stock, it will come out all right and you shan't lose a cent."

As the stock market continued weak, the plaintiff told defendant that unless he took up the stock it would have to be sold. To this defendant replied: "The stock is in your name, you can sell it, if you want to sell." Plaintiff then had the stock sold at a loss of $476.50.

The defendant having refused to sign a note for this amount which plaintiff took to him, this suit was brought to recover the same.

On the trial defendant denied that he had authorized the plaintiff to purchase the fifty shares of Reading, and, for the purpose of showing the character of the transaction, offered to prove, by several witnesses, a course of dealing in stocks on

margins by plaintiff with his broker where the transactions were closed by the settlements of differences merely, and that there was no intention of delivery in this case. These offers were all overruled and exceptions were taken. (Assignments of error, First to Fiftieth inclusive.)

The plaintiff requested the court to charge, *inter alia*:—

1. "If the jury believe the evidence of A. J. Dunlap, the verdict should be for the plaintiff." *Answer.* "Affirmed" (Fifty-first assignment of error.)

4. "If the jury believe the evidence of the plaintiff's witnesses, the verdict must be in favor of the plaintiff." *Answer.* "Yes; if the jury believe the evidence of plaintiff's witnesses, and if the jury find from the testimony of plaintiff's witnesses, and from all the evidence in the case, that it was paid for, and that it was the intention that the stock was to be delivered, then the verdict must be in favor of the plaintiff." (Fifty-second assignment of error.)

The court, in its general charge, instructed the jury, *inter alia*, as follows: "If it were a gambling transaction your verdict should be for the defendant; if it were not, the plaintiff is entitled to your verdict for the amount of loss shown by the evidence, and the interest on the same up to this day." (Fifty-third assignment of error.)

Verdict for the plaintiff for $550.39 and judgment thereon. Defendant then took this writ, assigning for error the exclusion of the evidence, the answers to the points and the portion of the charge, as above noted.

*J. L. Steinmetz* and *Marriott Brosius*, for plaintiff in error.— Most of the questions disallowed and the offers overruled were directed to the discovery of the intention of the parties at the time the deal was made, and the whole contention to be settled by this court is the latitude permitted in the testimony to enable the jury to penetrate the form of the transaction, and examine its substance and real character. That such evidence is admissible is shown by the cases of Kirkpatrick *v.* Bonsall, 22 P. F. S., 155; Ruchizky *v.* DeHaven, 1 Out., 202; Patterson's Appeal, 13 W. N. C., 154; Fareira *v.* Gabell, 8 Nor., 89; Juniata B. & L. Association *v.* Hetzel, 7 Out., 507; Dickson's Exrs. *v.* Thomas, 1 Out., 286.

One of the defences distinctly presented to the jury was that Dunlap's act, legal or illegal, was a voluntary one—entirely upon the basis of benevolence and generosity, and no liability against Mr. Potts was contemplated at the time the stock was ordered. Yet the court in the answer to plaintiff's fourth point, and in the paragraph of the charge embraced in the assignment, excluded from the view of the jury this phase of

[*Potts v. Dunlap.*]

the defence, and enabled them to find a verdict against the defendant without considering at all one branch of his defence.

*J. Hay Brown* and *B. Frank Eshleman*, for defendant in error.—The authorities cited by the counsel for defendant might apply under a different state of facts, but as they have no application here, and the principles contained in them are not questioned, it is needless to discuss them. For the same reasons we deem it unnecessary to collate and cite any of the innumerable authorities on the subject of stock gambling.

A *bona fide* contract for the purchase and sale of stocks, though a speculation, is a legitimate transaction, and when the stock is actually bought there can no longer be any question of intention as to delivery. In this case, as the stock was unquestionably actually bought for Potts, on his express order, he can raise no question about the intention to deliver it to him. It became his property from the time it was bought, and the loss incident to the re-sale, which was properly made, must fall upon him. In Smith *v.* Bouvier, 20 P F. S., 325, when it was insisted that the jury should have been instructed that all purchases of stock, with a view to re-sell and make profit on their rise, or contracts to furnish stocks on time should be declared gambling transactions and illegal, not only between buyers and sellers, but as to brokers or agents through whom the sales and purchases had been made, THOMPSON, C. J., in answer, said: " This would make a great inroad into what has, for an indefinite period, been regarded as a legitimate business, and would either destroy it altogether or, if continued, put the brokers at the mercy of those for whom they transact such business. Let it be understood that a broker has no power to recover either for advances or commissions, however justly he may have dealt, and there will be found enough persons whose easy consciences would throw their losses upon the shoulders of those who advanced the money and earned commissions in their service." In Kirkpatrick *v.* Bonsall, 22 P. F S., 155, the same principle is recognized.

The opinion of the court was filed June 1st, 1885.

PER CURIAM. We adhere to the rule that an agreement for the purchase of stocks on margin without any intention of delivering the stock is a gambling contract, which will not support an action between the parties thereto. That, however, is not this case. Here there was no agreement between these parties by which one was to buy of the other. The defendant in error did not agree to sell to the other party; but, at the request of the latter, and for him, the former agreed to buy the stock specified. He was to lend or advance the money to an amount sufficient

[Fell v. Bennett.]

to make the purchase, but was not to own the stock himself. With his money thus advanced he caused the stock to be purchased for the plaintiff in error, and notified him of the purchase. It was delivered to the broker of whom it was purchased, and ready for delivery to the plaintiff in error whenever he was prepared to pay the unpaid portion of the purchase money. The evidence shows that he recognized it as his stock. The jury has found under a fair and clear charge that the transaction between the parties was not a gambling contract, but was founded on an actual sale and purchase of the stock by the defendant in error for the plaintiff in error, and that the stock was bought with an intent to deliver the same to the latter. The fact that the defendant may have purchased for other persons, other stocks, under arrangements which would stamp them as wagering or gambling transactions, is wholly irrelevant. All the evidence offered as to contracts with other persons was therefore properly rejected. The intention of the parties to the contract is to be ascertained by their acts and declarations, and not from their thoughts unexpressed. A careful examination of the whole case does not disclose any sufficient cause for disturbing the judgment.

Judgment affirmed.