EDWIN H. CRANDELL *vs.* FRED M. WHITE & others.

Suffolk. January 14, 1895. — June 21, 1895.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Pleading — Constitutionality of Statute — Evidence — Statute — Instructions.*

An action for money had and received can be maintained under St. 1890, c. 437.

The St. 1890, c. 437, entitled "An Act relative to wagering contracts in securities and commodities," is constitutional.

In an action under St. 1890, c. 437, entitled "An Act relative to wagering contracts in securities and commodities," against A. and B. to recover money alleged to have been paid first to A., the plaintiff's agent, who afterwards paid it over to B., a broker, for the purchase of certain securities, it is competent for the plaintiff to show that A. had no intention to perform the purchase by the actual receipt of the securities and payment of the price; and if B. wishes the testimony to be limited to its effect as against A. himself, assuming that it should be so restricted, he should request the court so to limit it.

While it is a general rule that separate and distinct acts unconnected with those in suit are not admissible for the purpose of raising an inference that a party did the particular thing which he is charged with doing, yet, in an action under

St. 1890, c. 437, relative to wagering contracts to recover money alleged to have been paid to a broker for the purchase of certain securities, evidence may be received of such acts, if so near in time to those in suit and so connected with them that they may fairly be regarded as having some tendency to show that the defendant had reasonable cause to believe that no intention existed actually to perform the contracts.

CONTRACT against Fred M. White and Charles L. Tibbetts, partners under the name of F. M. White and Company, and Herbert Wonson, to recover $11,800, alleged to have been paid first to Wonson, the plaintiff's agent, who afterwards paid it over to White. The plaintiff sought to recover under St. 1890, c. 437, entitled " An Act relative to wagering contracts in securities and commodities " ; and the declaration contained eighteen counts, the fourth of which was for money had and received.

At the trial in the Superior Court, before *Bond*, J., there was nothing to show that Tibbetts was a partner with White, and the judge directed the jury to return a verdict for Tibbetts, and permitted the case to go to the jury on the fourth count alone as to White and Wonson, directing a general verdict for the defendants upon the other counts in the declaration.

The jury returned a verdict against the defendant. White alone for $12,858.04, and he alleged exceptions, in substance as follows.

It appeared in evidence that the controversy arose out of seven separate transactions for 100 shares of New York and New England, 200 shares of Union Pacific, 200 shares of New Jersey Central, 200 shares of Chicago, Burlington, and Quincy, 200 shares of Delaware, Lackawanna, and Western, 100 shares of Delaware and Hudson Canal, and 200 shares of Union Pacific Railroad Company, all bought between March 28 and May 13, 1892; that the amount paid to White on these contracts by Crandell, through his own agent Wonson, aggregated $11,800 ; and White testified that the stocks were sold by him on September 2, 1892, upon Wonson's orders to White.

White, called by the plaintiff, testified that he did business as a broker at 16 Devonshire Street, Boston, under the name of F. M. White and Company ; that he was the only member of the firm ; that he had known Wonson a little over two years; that he did not know Crandell, the plaintiff, never hav-

ing had any conversation with him; that he had seen him in the office during the summer of 1892; that Wonson had put in the seven orders in his own name, without disclosing the plaintiff's interest in the transactions, and had received receipts from him for the amounts paid on account of margins and dividends; that Wonson had something like $10,000 or $12,000 on deposit with him at that time; that at the time of purchase Wonson ordered the stocks protected in full; that he never knew of Crandell being interested in the contracts till the controversy arose about an adjustment of the interest account in September; that he bought the stock and received the certificates in each one of the seven transactions from Ames and Company, at No. 10 State Street; and that on September 2, 1892, he offered to deliver the stocks to Wonson, and later to the plaintiff's partner.

Wonson, called by the plaintiff, testified that he was not in any way connected with F. M. White and Company, but had traded with them; that he was the agent of the plaintiff, and all the contracts in controversy were made with the plaintiff's money; that he did not tell White it was the plaintiff's money, for the reason that it was the plaintiff's wish not to be known in the transaction; that, previous to any of the seven contracts in suit, he had a conversation with the plaintiff at his office on Summer Street, in which the plaintiff instructed him to keep whatever he bought protected in full, as he did not propose to be closed out, but always intended to keep his stocks good; that he did not intend to take more than he could take care of; that these instructions were never revoked; that in buying he was simply carrying out the instructions of the plaintiff; that he told White, at the time of buying the stocks, that he wanted them protected in full; and that he was present at the interview in September between White and Knowlton, the plaintiff's partner, when White offered to deliver the stocks to Knowlton, but that he did not see the certificates.

The following testimony of Wonson was offered by the plaintiff, to which a general objection was made by the defendant, the judge admitting the testimony, subject to the defendant's exception. Wonson testified that all the margins in the original orders were paid by the plaintiff to him in the office of

F. M. White and Company, and then in the presence of the plaintiff were carried by him to F. M. White and Company and paid immediately over to them ; that he did not have any intention at the time of delivering the certificates to the plaintiff ; that when he made the order for New York and New England stock and signed his own name, "H. Wonson," he had no intention of paying the full amount of $4,950 personally, nor did he have any idea of paying out the first $100, because it was not his property; and that he had no intention at any time of taking 100 shares of the stock as for himself personally. Wonson gave the same testimony in relation to the other shares purchased by him with the plaintiff's money.

The plaintiff testified that in March, 1892, he employed the defendant Wonson to buy stocks for him, as he did not wish to have his name known in the transaction, but was in the office of F. M. White and Company nearly every day; that he never had any interview with White; that he instructed Wonson to protect his stocks in full; and that, at the time when the contracts were made, he did not intend to receive the certificates or pay for them.

The plaintiff testified that within one week before the purchase of March 28 he closed out, through Wonson, a contract with White and Company, and, according to his recollection, White was present, and that White was present when all the business was done. The plaintiff gave similar testimony as to other transactions between March 23 and March 28, and stated that there was no delivery of certificates.

This testimony was objected to generally by the defendant, and admitted subject to his exception.

At the conclusion of the plaintiff's case, the defendant offered no testimony, but requested the judge to rule as follows:

"1. The fourth count in the plaintiff's declaration, which is the only count for the consideration of the jury, is a declaration at common law for money had and received, and does not bring him within St. 1890, c. 437, as to wagering contracts, and the plaintiff cannot recover. 2. The St. 1890, c. 437, is unconstitutional and void."

The judge refused to give the above rulings, and, among other things, instructed the jury as follows:

" Certain transactions were admitted which took place prior to the transactions which are involved in this suit. The only use that should be made of those is the effect which they ought to have, if they are of a certain character, upon the mind of White as to what the plaintiff, or Wonson, if Wonson was the only one he knew in the transaction, really intended in the matter. To illustrate, suppose he had been dealing prior to this time directly with the plaintiff; that they had during the week before or during the month before half a dozen of the same sort of transactions, in which it was clear that both parties understood that the stock was never to be delivered and paid for; that that was not the intention of the parties; and stocks were bought, margins put up, settlements were made and the money paid either one way or the other, as the result might be, as indicated by the standard they had agreed upon. Now, if he comes in the next day, or, as in this case, on March 28, and makes another precisely similar contract, it would then be a question, in view of all the other contracts that had been made, whether this contract was of the same kind, and was not intended ever to be carried out. Of course, that involves the inquiry whether the other contracts were of that class, and whether this one was precisely of the same nature.

" Now, if the other contracts did not relate to what was termed ' protected stock,' and this one did, or these others all did, and there was this difference between the unprotected and the protected stock, which I have explained, then the contracts were not of the same kind; they differed so materially, that if that is what was' meant, that where the stock was protected it meant the purchase and delivery, then the others do not help you any with reference to the contracts involved in this suit. It is only when the others are just like these that they furnish reasonable ground for you to believe that these parties must have intended what was in their minds when they made the other contracts; — if they were precisely the same kind, or so similar that you cannot help but conclude that they must have thought these were just like the others. And therefore, with reference to the other transactions, I do not understand that they were made directly between the plaintiff and White; but it would make no difference with the principle whether they were made by the

plaintiff through Wonson with White, if they were just the same kind of contracts, and they were such contracts that you think that then the parties believed, not simply one of them, or that one of them believed and the other ought to have believed, had reasonable cause to believe, that that is what the other one intended ; if these others that were made afterwards and involved in this suit were precisely similar to them, then you may use the consideration of these other contracts, bearing upon the question whether the defendant White did not have reasonable cause to believe that the contracts which were just like the prior ones in every respect were made with the same intention that the other ones were."

Full instructions were given, to which no exceptions were taken, with reference to the facts to be proved by the plaintiff to entitle him to recover against the defendant White, or against the defendant Wonson, or against both White and Wonson.

*J. F. Libby*, for the defendants.

*G. A. O. Ernst*, for the plaintiff.

MORTON, J. 1. The plaintiff was allowed to go to the jury only upon the fourth count, which was for money had and received ; and the first question is one of pleading. At the conclusion of the evidence, the defendant White asked the court to rule that the count did not come within St. 1890, c. 437, and that the plaintiff could not recover. The court refused the ruling, and the defendant duly excepted. The statute, on which this action is based, provides in § 2 : " Whoever contracts to buy or sell upon credit or upon margin any securities or commodities having at the time of contract no intention to perform the same by the actual receipt or delivery of the securities or commodities, and payment of the price, or whoever employs another so to buy and sell on his behalf, may sue for and recover in an action of contract," etc. An action for money had and received is an action of contract, and comes literally within the terms of the statute. There is nothing to show that the Legislature intended to limit the scope of the action. There was no bill of particulars annexed to the count; but no advantage was taken of that fact by the defendant, either by way of demurrer or by objection that the evidence by which it was sought to sustain the action was not admissible under the count as it stood, as

was the case in *Rogers* v. *Newbury*, 105 Mass. 533. If a bill of particulars had been called for, very likely the facts in regard to the various transactions, and whether they were legal or illegal, would have appeared from it. If not, the objection could have been met by a motion for additional specifications. The defendant's request was, in effect, for a ruling that an action for money had and received could not be maintained under the statute. A majority of the court think that it was rightly refused, that it came too late, and that the objection should have been taken by way of demurrer.

2. The defendant asked for a ruling that the statute was unconstitutional, and duly excepted to the refusal of the court so to rule. We discover no ground on which the statute can be held to be unconstitutional. The Legislature may well have deemed the transactions referred to in it a species of gambling. And it is too well settled to require discussion that laws aimed at the suppression of gambling are constitutional. The fact that the statute gives parties a remedy against agents whom they may employ does not render it unconstitutional. A remedy is given against them only so far as they are participants in transactions coming within the condemnation of the statute. Neither is the objection tenable that the statute is unconstitutional because it makes certain conduct *prima facie* evidence of the existence of a certain fact. *Holmes* v. *Hunt*, 122 Mass. 505. And there is nothing in the exceptions to show that the objection arose in regard to any evidence that was offered.

3. The objection to Wonson's testimony was a general one. If it was admissible, therefore, in any aspect of the case the objection was rightly overruled. He was employed by the plaintiff to buy and sell on his behalf, and was therefore properly made a party defendant under the express terms of the statute. As a person employed by the plaintiff to buy and sell, it was competent for the plaintiff to show that Wonson had no intention to perform the purchase by the actual receipt of the securities and payment of the price, and his own testimony to that was, from the nature of the case, the best attainable. If the defendant White wished the testimony to be limited to its effect as against Wonson himself, assuming that it should have been so restricted, he should have requested the court so to limit it.

4. The defendant White also objected to the introduction of evidence relating to the transactions during the five days next preceding that on which those in suit began. It is a general rule, that separate and distinct acts unconnected with those in suit are not admissible for the purpose of raising an inference that a party did the particular things which he is charged with doing. But we think in this case that the transactions objected to were of such a nature and were so connected with those in suit, and so near to them in time, that they might fairly be regarded as having some tendency to show that the defendant White had reasonable cause to believe that no intention existed actually to perform the contracts which form the basis of the present suit. Under the carefully guarded instructions of the presiding justice, we do not see how the jury could have given them any other effect than that to which they were properly entitled.                                *Exceptions overruled.*