# Birmingham Trust & Savings Co.
## v. Currey, et al.

*Assumpsit.*

(Decided December 21, 1911. 57 South. 962.)

1. *Appeal and Error; Supersedeas; Curing Defects.*—On appeal, the defects in a supersedeas bond cannot be cured, but the defects therein should have been remedied in the trial court.

2. *Same; Presentation Below.*—Appellees cannot for the first time on appeal object to a supersedeas bond defective in such particulars, but not rendered wholly ineffectual thereby, and hence, such defects is not grounds for dismissal of the appeal, especially in view of the provisions of sections 2885-6, Code 1907.

[Birmingham Trust & Savings Co. v. Currey, et al.]

3. *Same.*—Only those grounds of objections to pleas which were taken by demurrer in the trial court and renewed in the appellate court will be considered on appeal.

4. *Gaming; Action; Plea; Illegality.*—Where the action was on a promissory note alleged to have been executed by the defendant to the assignor of plaintiff, a plea alleging that it was not intended or contemplated by either of the parties to the transaction that the actual cotton would be delivered, but that it was contemplated and intended by all such parties that at the time of delivery differences would be settled by paying or receiving the difference between the price when sold and the price at the time of delivery, and the note having been given for margins advanced and commissions for purchasing cotton on margins without actual delivery, was sufficient as alleging that the parties mutually intended that the transaction should be adjusted by the payment of the differences only, so as to render the contract unlawful, the word "contemplated" as used in the plea signifying purpose or intention.

5. *Same; Validity; Purchasing on Margin.*—An agreement by plaintiff's assignor with defendant to procure contracts for the purchase and sale of cotton on margins only, and without actual delivery, was void as between the parties, preventing recovery of commissions, or of margins advanced by the assignor in furtherance of the agreement, whether the contracts actually made with others by the assignor of plaintiff were for the actual purchase of cotton, or not, as that was a mere evidential fact, bearing on whether the contract between such assignor and such defendant, was a wagering contract.

6. *Same; Evidence.*—Where the action was on a promissory note alleged to have been executed by defendant to plaintiff's assignor for margins advanced and for commissions for purchasing cotton, it was competent, on the question of whether such purchases were intended as wagering contracts, to show that there had never been any actual delivery in other transactions between the parties involving the purchase of cotton for future delivery, although evidence as to gambling transactions between plaintiff's assignor and third persons were not admissible.

7. *Statutes; Retro-active; Affecting Remedy.*—Statutes which merely relate to the remedy, without affecting the right of action, are retro-active, and affect existing causes of action, as well as those subsequently accruing; hence, section 3351, Code 1907, (enacted in 1907) would apply in an action commenced in 1904, and tried in 1910.

8. *Charge of Court; Purpose of Evidence.*—Where evidence was admissible for a certain purpose only, a charge limiting it to that purpose should have been given on request.

APPEAL from Marshall Circuit Court.

Heard before Hon. W. W. HARALSON.

Action by the Birmingham Trust & Savings Company against W. W. Currey and others. From a judgment

for defendants, plaintiff appeals. Reversed and remanded.

See, also, 160 Ala. 370, 49 South. 319, 135 Am. St. Rep. 102.

The action is in assumpsit on certain promissory notes executed by Currey, with the others names as sureties, to Hooper & Co., and by Hooper & Co. indorsed to the plaintiff. The pleas mentioned are as follows:

(10) "And for further plea on this behalf the defendants say that part of the consideration of the note sued on was and is a gambling consideration, which arose as follows: Defendant Currey contracted with A. B. Hooper that said A. B. Hooper should purchase for the use and benefit of defendant Currey from certain person or persons in the state of New York cotton for future deliveries by merely staking margins, it not being contemplated, either by said Hooper, or by said Currey, or by said person or persons in New York, that the actual cotton would be delivered, but that when the time for delivery arrived differences would be settled by paying or receiving the difference between price when sold and at the time stipulated for delivery, and that at the time of the making of said contract it was not intended, either by said Hooper or said Currey, or by said person or persons in New York, that the actual cotton would be delivered, but that the real intention of said Hooper and said Currey and said persons in New York was that the differences would be settled by paying or receiving the difference between price when sold and at the time stipulated for delivery. That said A. B. Hooper used the name of J. F. Hooper in making said transaction. That part of the consideration of the note sued on was and is commissions charged by the said A. B. Hooper for his services as a broker in negotiating and consummating said transaction. That the law in the

state of New York was at the time of making said contract as follows, viz.: 'All wagers, bets or stakes made to depend upon any race, or upon any gaming by lot or chance, or upon any lot, chance, casualty, or unknown or contingent event whatever, shall be unlawful. All contracts for and on account of any money or property or thing in action so wagered, bet or staked shall be void. Any person who shall pay, deliver or deposit any money, property or thing in action upon the event of any wager or bet herein prohibited may sue for and recover the same of the winner or person to whom the same shall be paid or delivered, and of the stakeholder or other person in whose hands shall be deposited any such wager, bet or stake or any part thereof, whether the same shall have been paid over by such stakeholder, or not, and whether any such wager be lost or not.' "

(12) "That the consideration of the note sued on was and is a gambling consideration, which arose as follows: Defendant Currey contracted with J. F. Hooper that J. F. Hooper would purchase for the use and benefit of defendant Currey from person or persons in the state of New York cotton for future delivery by merely staking margins, it not being contemplated or intended by either of the parties, Hooper or Currey, or the person or persons in the state of New York, that the actual cotton would be delivered, but being contemplated and intended by all of said parties that when the time for delivery arrived differences would be settled by paying or receiving the difference between the price when sold and the price at the time of delivery. That cotton declined, and the note sued on was given for margins advanced or staked by Hooper for defendant Currey, at his request, in accordance with the said illegal contract above set out. That in said transaction Hooper acted as broker of defendant Currey, and received certain

commissions as compensation for such services as broker, which are also a part of said note sued on. That the contract with said person or persons in the state of New York was made in the name J. F. Hooper, and the defendants aver that the laws of the state of New York provide as follows: 'All wagers, bets or stakes made to depend upon any race, or upon any gaming by lot or chance, or upon any lot, chance, casualty, or unknown or contingent event whatever, shall be unlawful. All contracts for and on account of any money or property or thing in action so wagered, bet or staked shall be void. Any person who shall pay, deliver or deposit any money or property or thing in action upon the event of any wager or bet herein prohibited may sue for and recover the same of the winner or person to whom the same shall be paid or delivered, and of the stakeholder or other person in whose hands shall be deposited any such wager, bet or stake or any part thereof, whether the same shall have been paid over by such stakeholder or not, and whether any such wager be lost or not.' "

(13) "And for further plea on this behalf the defendants say that the consideration of the note sued on was and is a gambling consideration, which arose as follows: Defendant Currey contracted with J. F. Hooper, the payee of said note, that said Hooper should purchase for the use and benefit of defendant Currey, through A. Norden & Co., brokers, in the state of New York, cotton for future delivery, by merely staking margins with said A. Norden & Co., the margins to be advanced by Hooper as called for by said A. Norden & Co., it not being contemplated by either or by said Norden & Co., that the actual cotton would be delivered, but that the said contract of purchase should be settled by paying or receiving losses or winnings resulting from fluctuations in the market, and that at the time of the making

of said contract it was not intended, either by said Hooper or Currey, or by Norden & Co., that the actual cotton would be delivered; but the real intention of said Hooper and Currey, and said Norden & Co., was that said contract of purchase should be settled by paying or receiving the losses or winnings resulting from fluctuations in the market. That said contract of purchase was to be made in, and in fact was governed by the laws of the state of New York. That at the time of making said contract of purchase the laws of the state of New York provided as follows: 'All wagers, bets or stakes made to depend upon any race, or any gambling by lot or chance, or upon any lot, chance, casualty or unknown contingent event whatever, shall be unlawful. All contracts for and on account of any money or property or thing in action so wagered, bet or staked shall be void. Any person who shall pay, deliver or deposit any money, property or thing in action upon the event of any wager or bet herein prohibited may sue for and recover the same of the winner or person to whom the same shall be paid or delivered, and of the stakeholder or other person in whose hands shall be deposited any such wager or bet or stake, or any part thereof, whether the same shall have been paid over by such stakeholder or not, and whether any such wager be lost or not.' And defendants aver that the note sued on was given for margins advanced or staked by said Hooper for defendant Currey, at his request, in accordance with said illegal contract, and also for commissions charged said Currey by said Hooper for services rendered in procuring said illegal contract."

The demurrers assigned are: "(1) The facts relied on to show a gambling consideration are averred by way of recital. (2) The averment that the defendant bought cotton by simply staking the margins is indef-

inite and uncertain. (3) It is not averred that it was mutually understood and agreed between the buyer and the seller that there was to be no delivery of the cotton contracted for. (4) The fact well pleaded does not show that the contract was a gambling one. (5) The averment that the margins were staked in accordance with the original illegal contract is the averment of a conclusion. (6) It is not averred that the person from whom Norden & Co. bought the cotton participated in the illegal intention not to deliver the cotton. (7) It is not averred that both buyer and seller agreed either expressly or impliedly that there should be no delivery of the cotton." These demurrers were filed to plea 13. The same demurrers were filed to plea 12, with these additional grounds: "It is not averred that it was understood or agreed by the seller of cotton, at the time the contract was made, that there should be no delivery of the cotton. The plea does not aver that poth parties to the contract agreed that cotton should not be delivered. It is not shown how the said illegal contract entered into the note as a part of the consideration thereof." These same demurrers were interposed to plea 10.

STREET & ISBELL, and M. W. HOWARD, for appellant. The contracts were governed by the by-laws and rules of the New York Cotton Exchange, and therefore, by the laws of New York, and if valid, under laws of that state, and of the rules of the exchange, will be enforced here.—*Pete v. Hatcher*, 112 Ala. 514; *Guesnard v. R. R. Co.*, 76 Ala. 453; *Cawthorn v. Lusk*, 97 Ala. 674; *Bibb v. Allen*, 149 U. S. 489; *White v. Barbour*, 123 U. S. 243; 48 Am. St. Rep. 341; 29 A. & E. Enc. of Law 396. The by-laws and rules are legal and not opposed to any public policy.—*Springs v. James*, 121 N. Y. Supp. 1054; 61 C. C. A. 11; 198 U. S. 236; 182 U. S. 461. Delivery

is intended and required thereby.—*White v. Barbour, supra; Walcott v. Health,* 78 Ill. 443; *Preston v. R. R. Co.,* 1 L. R. A., 140. The fact, if it be a fact, that gambling is done there affords no ground for inference against any particular contract made there.—*Roundtree v. Smith,* 108 U. S. 269; 198 U. S. 246; *Martin v. Smith,* 116 Ala. 639; *Odon v. Rippitoe,* 4 Ala. 68; *Smith v. Rogers,* 1 S. & P. 321. Actual delivery was contracted for in this case.—*Irwin v. Williar,* 110 U. S. 507; *Bibb v. Allen, supra; Hooper v. Nuckols,* 39 South. 711. Even Currey is not shown to have had an unlawful purpose. Hooper's knowledge or intention unimportant.—*Lee v. Boyd,* 86 Ala. 283; *Frenckel v. Hudson,* 82 Ala. 162; 1 A. & E. Enc. of Law, 1146; 1 Paige on Contr. 802. In the second place, any knowledge Hooper may have had was not acquired while in the discharge of his duties as cashier.—*Reid v. Bank,* 70 Ala. 211; *Goodbar v. Daniels,* 88 Ala. 590. Hooper's knowledge and intention not decisive.—*Hooper v. Nuckols, supra; Pearson v. Hooper,* 43 South. 576; *Bluthenthal v. McWhorter,* 131 Ala. 642; *Oxford Co. v. Quinchett,* 44 Ala. 487; *Hawley v. Bibb,* 69 Ala. 52. The anti-bucket shop act is not retroactive.—Inlett's Interpretation of Statutes, secs. 271, 282, 289, 290. In resisting the motion to dismiss the appeal for defects in the supersedeas bond, counsel filed good security for costs, and insist that if any defects exist in the supersedeas bond, they have been waived.—Secs. 3885-6, Code 1907; *Alexander v. Rea,* 50 Ala. 64; *Thornton v. Moore,* 61 Ala. 347; *Vaughan v. Higgins,* 68 Ala. 546; *Robinson v. Murphy,* 69 Ala. 543; *Coffee v. Norwood,* 81 Ala. 512.

GOODHUE, BRINDLEY & WHITE, for appellee. Counsel insist that an ineffectual attempt has been made to comply with section 2873, Code 1907, and that no se-

curity is given for costs as contemplated by section 2872, and hence, the appeal should be dismissed. The contract was a gambling contract and it is sufficiently set up and shown to be such by plea 10.—*Bir. T. & S. Co. v. Currey,* 49 South. 319; 20 Cyc. 929; Id. 952; *Kennedy v. Stout,* 2 Ill. App. 133; *Embry v. Jemison,* 131 U. S. 336. It is competent to show in this connection other transactions in which purchases and sales were made without actual delivery.—14 A. & E. Enc. of Law. 620; 36 Cyc. 1217; 178 Mass. 591; *Woodvine v. Dean,* 194 Mass. 40; *Ingram v. Dooley,* Morr, 28. Section 3351, affects the remedy and not the right of action, and hence was applicable to this case since it was not tried until 1910.—Authorities next above.

SAYRE, J.—Appellant, having lost its case and suffered judgment for costs in the court below, undertook to execute a supersedeas as provided by section 2873 of the Code rather than security for costs only as provided by section 2872. This supersedeas is defective in two particulars: Thomas R. Roberts, who was one of the parties defendant to the judgment, is not named among the obligees. The sureties are not named in the body of the bond. No notice was taken of these defects at the time of the submission; but now appellees urge in their brief that the appeal ought to be dismissed by this court ex mero. Besides taking issue on the propriety of the proposition thus advanced, appellant has lodged with the clerk an affidavit showing that said Roberts was dead at the time the judgment was rendered, and offers to the court through the same agency a sufficient supersedeas bond in all respects regular as to form. These efforts to present a better record come too late, and; so far as the suggestion of the death of Roberts is concerned, that should have been made in the trial court.

Appellees' suggestion, if meritorious at all, is likewise too late. The bond, though defective, is not ineffectual, and the objection to it should have been so timed as to afford appellant an opportunity of curing its defects.— Code, §§ 2885-2886, and cases cited in the annotations to section 2885.

This action was brought by appellant as indorsee of a promissory note executed by the defendants to J. F. Hooper, and by the latter negotiated to the plaintiff. The defense was rested upon the alleged illegality of the consideration, taking the form, to state it generally, that the obligation sued upon arose out of gambling transactions in cotton futures by the defendant Currey. The other defendants joined in the note as sureties. Pleas 10, 12, and 13, the issues made by which were submitted to the jury, and the sufficiency of which is questioned on this appeal, will be set out by the reporter in his statement of the case. However defective these pleas may be, we are to consider only that ground of objection to them taken in the court below and renewed here as a reason for reversal. Something is said in the brief to the effect that material facts are averred in the way of recital only, but we think the criticism may be said to be hypercritical at best, and we find nothing of it in the demurrer. The objection to be considered briefly is that defendants have failed to aver that it was mutually understood and agreed between the parties to the contracts for the sale of future delivery cotton that there was to be no delivery in fact. The language of plea 12, to deal with that as fairly illustrative of the rest, is that it was not "contemplated or intended by either of the parties  *  *  *  that the actual cotton would be delivered," but it was "contemplated and intended by all of said parties that, when the time for delivery arrived, differences would be settled by paying or receiving the

difference between the price when sold and the price at the time of delivery." The argument seems to seize upon the word "contemplated" in the plea as if used to indicate that the parties had in view a discharge of the obligation of the contract between them by the payment of differences as a mere contingency, a method of settlement which the parties might in the then future lawfully agree upon if in the beginning they had a bona fide contract for actual delivery. That is a permissible use of the word, and it expresses the mind of the Supreme Judicial Court of Massachusetts when it said in *Barnes v. Smith,* 159 Mass. 344, 34 N. E. 403: "But a mere expectation on the part of plaintiff and of the defendant," who were parties in that court to an issue identical with that here in hand, "that the purchaser of shares would be willing to adjust the transactions on the basis of receiving or paying differences when there was no agreement or understanding to that effect, or to the effect that the plaintiff should protect the defendant from being called on to make or accept any actual deliveries of shares, would not be sufficient to render the contract illegal." So, also, in respect to *Chicago Board of Trade v. Christie,* 198 U. S. 236, 25 Sup. Ct. 637, 49 L. Ed. 1031, where this language was used: "The fact that contracts are satisfied in this way by set-off and the payment of differences detracts in no degree from the good faith of the parties, and, if the parties know when they make such contracts that they are likely to have a chance to satisfy them in that way and intend to make use of it, that fact is perfectly consistent with a serious business purpose and an intent that the contract shall mean what is says." The court added: "There is no doubt, from the rules of the Board of Trade or the evidence, that the contracts made between the members are intended and supposed to be binding in

manner and form as they are made." But "contempla-
tion" also signifies "purpose" or "intention more def-
initely, and the purport of these pleas, in which con-
templation and intention are conjoined, is that the par-
ties mutually contemplated and intended in the begin-
ning that their transactions should be adjusted by the
payment of differences only. That intention rendered
the contracts unlawful alike in New York and Alabama.
—*Hawley v. Bibb,* 69 Ala. 52; *Perryman v. Wolffe,* 93
Ala. 290, 9 South. 148; *Allen v. Caldwell,* 149 Ala. 293;
42 South. 855; *Story v. Solomon,* 71 N. Y. 420; *Embrey
v. Jemison,* 131 U. S. 336, 9 Sup. Ct. 776, 33 L. Td. 172.
Demurrers to these pleas were properly overruled.

Plea 13 alleges that defendant Currey contracted
with J. F. Hooper to purchase cotton for future delivery
through Norden & Co., brokers in New York, there be-
ing no intention on the part of defendant, Hooper, or
Norden & Co., that the cotton should be delivered. The
replication avers that Norden & Co. purchased from
Weld & Co. and others, and that the sellers "did not
know of and participate in the alleged unlawful purpose
of Currey." The theory of the replication is that the
contracts of sale were between the New York sellers and
the defendant Currey, and that the concurring unlaw-
ful purpose or intention of both parties is necessary
to render these contracts unlawful. The proposition of
law involved in this contention is not denied in its
proper application. But the pith of the plea is that
defendant employed Hooper to procure for him con-
tracts with others which were to be settled by the pay-
ment of differences only; Hooper advancing money or
credit for that purpose. If Hooper, under this employ-
ment, procured contracts which could be settled only
by the actual delivery of cotton on the demand of either
party, Hooper, or those through whom he acted, if they

contracted, in their own names, assumed the burden of such contracts. He could not work a change in the nature of Currey's obligation without his assent. The contracts which, according to the plea, Hooper agreed to procure for Currey, being denounced by statute alike in New York and Alabama, the contracts between Hooper and Currey to the end of their procurement was unlawful also, and the former cannot recover commissions or money advanced for their furtherance. What may have been the nature of the contracts with these parties into which Hooper entered for the purpose of executing his agreement with Currey as matter of substantive law is immaterial to the parties to the present litigation. At best, it is a mere evidential circumstance corroborative of plaintiff's version of the facts.—*Irwin v. Williar*, 110 U. S., 499, 4 Sup. Ct. 160, 28 L. Ed. 225; *Embrey v. Jemison, supra; Harvey v. Merrill*, 150 Mass. 1, 22 N. E. 49, 5 L. R. R. 200, 15 Am. St. Rep. 159; *Fareira v. Gabell*, 89 Pa. 91; *Rogers v. Marriott*, 59 Neb. 759, 82 N. W. 21; *Kennedy v. Stout*, 26 Ill. App. 133; *Jamieson v. Wallace*, 167 Ill. 388, 47 N. E. 762, 59 Am. St. Rep. 302. We find nothing to the contrary in *White v. Barber*, 123 U. S. 392, 8 Sup. Ct. 221, 31 L. Ed. 243, cited by appellant. In that case it was determined in the trial court, and on appeal it was assumed as a fact, that the contracts involved were not intended to be wagering speculations. Nor do we see that the cases of *Bluthenthal v. McWhorter*, 131 Ala. 642, 31 South. 559, and *Oxford Co. v. Quinchett*, 44 Ala. 487, or the authorities cited in connection with them, stand in the way of our conclusion. Conceding that, to disable himself to recover money lent, the lender must do something more than simply advance the money with a knowledge of the unlawful purpose for which it is wanted, that to have that effect he must promote the

enterprise more directly, the averment here, we note, is in effect that plaintiff's assignor, if he kept within the limits of his authority, if he procured such contracts as he was expected to procure, as we must assume he did, actually staked the money on the result of unlawful contracts.

In plea 10 plaintiff's assignor is not shown to have been a party to the transactions out of which arose the liability sought to be enforced. The averment is that A. B. Hooper used the name of plaintiff's assignor, and that "part of the consideration of the note sued on was and is commissions charged by the said A. B. Hooper for his services as a broker in negotiating and consummating said transaction," all the parties to which, to state the further effect of the plea, intended it for a gambling transaction. The demurrer to the replication, which averred that the note was executed by the defendant to plaintiff's assignor to reimburse him for money of his used in the transaction, was no doubt sustained on the idea that whether plaintiff's assignor did or did not know the illegal nature of the transaction, and though, if ignorant, he was entitled to have his money, yet, when he accepted and sued on a note securing unlawful commissions along with the rest, he adopted the transaction as a whole. The note was tainted with illegality. It was impossible to say which part of the consideration induced the promise; and defendant's demurrer to the replication was properly sustained.—*Folmar v. Siler*, 132 Ala. 297, 31 South. 719; *Pettit v. Pettit*, 32 Ala. 288.

It appeared without conflict that A. B. Hooper, son of plaintiff's assignor, J. F. Hooper, assisted his father in carrying on the latter's business, which in general was banking, and the transactions in controversy were negotiated by him in his father's name. There was no

question about A. B. Hooper's agency to procure for customers contracts for the purchase or sale of cotton for future delivery, nor was anything said of commissions in pleas 12 and 13, so that, under these pleas and the undisputed facts, the only questions at issue were whether A. B. Hooper and Currey mutually intended that the contracts to be negotiated in New York should be wagers, and, if so, whether plaintiff's assignor had knowledge of that fact. As tending to establish defendant's contention in respect to these issues, he was permitted to show that in other transactions involving the purchase for future delivery of cotton and ribs, some of them between Hooper and Currey, others between Hooper and other parties, there had never been any actual deliveries, and that settlements had been made in those instances by the payment of differences only. To these rulings exceptions were duly reserved, and they are assigned for error. When this case was here on a former appeal (160 Ala. 370, 49 South. 319, 135 Am. St. Rep. 102), it was ruled that in determining J. F. Hooper's knowledge of the nature of the transactions it was competent to show similar transactions with others had with his knowledge and consent. Unquestionably the validity of every separate transaction is to be determined upon its own facts. But it does not follow that the admissibility of every evidential circumstance must be tested by its own intrinsic probative force without regard to its relation with other evidence in the case. "It is the bearing, not the independent force of the particular fact or circumstance, upon which its relevancy depends."—*Nelms v. Steiner,* 113 Ala. 562, 22 South. 435. It is to be observed, also, that the former pronouncement in this case had nothing to do with the manner of proving the intrinsic illegality of contracts for future delivery, but touched only upon the method

of fastening upon the principal notice of the illegality of contracts negotiated by his agent; such illegality being assumed in the statement. It related to the relevancy of a course of dealing between principal and agent as going to show the agent's general authority, and the principal's knowledge of what his agent had done in a particular case. The questions now presented, both by objections to evidence and by charges seeking to limit the field in which such evidence should operate, are different. The authorities are in conflict as to whether other and distant transactions between the same parties are admissible upon the question of the legality of such contracts as are involved in this suit. We think the correct rule is to be found stated in *Crandall v. White,* 164 Mass. 54, 41 N. E. 204, a case of the same general character as this, as follows: "It is a general rule that separate and distinct acts unconnected with those in suit are not admissible for the purpose of raising an inference that a party did the particular things which he is charged with doing. But we think in this case that the transactions objected to were of such a nature and were so connected with those in suit, and so near to them in time, that they might fairly be regarded as having some tendency to show that the defendant White had reasonable cause to believe that no intention existed actually to perform the contracts which form the basis of the present suit." But it is held, and properly we think, that the fact that a party has engaged in gambling transactions with strangers is wholly irrelevant.—*Potts v. Dunlap,* 110 Pa. 177, 20 Atl. 413. Such evidence, in general, "it would be manifestly unjust to admit, since the conduct of one man under certain circumstances or towards certain individuals, varying as it will necessarily do according to the motives which influence him, the qualities he possesses and his

knowledge of the character of those with whom he is dealing, can never afford a safe criterion by which to judge of the behavior of another man similarly situated, or of the same man toward other persons."—1 Tayl. Ev. (10th Ed.) § 317, quoted in Jones, Ev. § 140. All the considerations which make against admissibility of res inter alios actæ obtain here. However, this testimony being relevant to one aspect of the case, or rather to one issue involved in the case, as was held on the the former appeal, it was properly admitted. But in charges 15 and 16, refused by the court, appellant sought to limit the operation and effect of this evidence in accordance with the views we have expressed in regard to its relevancy. That was the approved method of reaching the end desired, and in refusing these charges the court committed error.

It has long been a part of the statute law of this state that "all contracts, founded in whole or in part, on a gambling consideration, are void."—Code, § 3338. The act of March 7, 1907 (Acts, p. 448 et seq.; Code, §§ 3349-3352, 6473-6478), enumerates and declares void certain "future contracts," including contracts for the sale of cotton, provides criminal punishment for all persons who become parties to such contracts, and establishes a rule of evidence for controversies arising out of such contracts. In so far as the act of 1907 enumerates those contracts which shall be held void, its probable effect, if not its purpose, was to withhold the law's denunciation from contracts in commodities not numerated. In so far as it declares void the enumerated contracts, it re-enacts section 3338, and declares again the law as it had been declared by this court on several occasions. It does not purport to effect, nor could it effect, any change in the substantive rights of the parties to the transactions at issue which were had

before the statute of 1907. It was in terms limited to take effect from the beginning of the year 1908. This suit was commenced in 1904 and tried in 1910. The substantive rights of the parties were to be decided according to the law as it existed when the action was begun; but the general principle is that statutory alterations in the rules and methods of procedure, including rules of evidence, are always retrospective unless there be some good reason against it.—Endlich, Interp. Stat. §§ 282-286. "Statutes which relate alone to the remedy, without creating, enlarging, or destroying the right, operate generally on existing causes of action, as well as those which afterwards accrue."—*Coosa River Co. v. Barclay,* 30 Ala. 120; *Tutwiler v. Tuscaloosa Co.,* 89 Ala. 391, 7 South. 398. There is no vested right in the rules of evidence. It is clear that there was no actual delivery of cotton at any time, and that "margins" were deposited or secured. The rule of evidence enacted in section 3351 of the Code was therefore operative in the case. And on this rule, in connection with all the circumstances in evidence, it was for the jury to say whether A. B. Hooper and Currey had a common purpose that there should be no deliveries of cotton, and, if so, whether plaintiff's assignor had knowledge of that fact. We have considered the questions raised. For the error pointed out the judgment is reversed; the cause is remanded.

Reversed and remanded. All the Justices concur, except Dowdell, C. J., not sitting.