(75 South. 883)

MONTGOMERY LIGHT & TRACTION CO.
v. DEVINNEY. (3 Div. 286.)

(Supreme Court of Alabama. May 31, 1917.)

CARRIERS ☞317(10)—CARRIAGE OF PASSEN-
GERS—INJURY—NEGLIGENCE—EVIDENCE.

In an action for injuries in attempting to
leave a street car when the handhold broke
and precipitated plaintiff to the ground, evi-
dence that plaintiff had on previous occasions
jumped off the car at the particular point and
was accustomed to jumping off, as tending to
show the intention of plaintiff when he rose
from his seat and went to the running board
of the car, was properly rejected; there having
been eyewitnesses to the accident.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 1303, 1304.]

Appeal from City Court of Montgomery;
Gaston Gunter, Judge.

Action by Morgan Devinney against the
Montgomery Light & Traction Company. From
a judgment for plaintiff, defendant appeals.
Transferred from the Court of Appeals under
Acts 1911, p. 450, § 6. Affirmed.

Rushton, Williams & Crenshaw, of Mont-
gomery, for appellant. L. A. Sanderson, of
Montgomery, for appellee.

GARDNER, J. Plaintiff (appellee in the
court below) was a passenger on one of the
street cars of the appellant in the city of
Montgomery, and received injuries from a
fall from the running board of the car, for
which he recovered damages, and hence this
appeal.

The car was what is known as a summer
car, the seats running all the way across the
same, with the running board on the side, on
which passengers stepped in going upon the
car and in alighting therefrom. Plaintiff in-
sists that his destination was Whitman
street, which was about 90 feet below where
he fell, and that he requested the conductor
to let him off at that corner, and the conduc-
tor had rung the bell, and the car was slow-
ing down, that he stepped to the running
board to be ready to get off when the car
reached the corner, and that as he put his
weight on the handle hold to step to the run-
ning board the handle hold broke and threw
him to the curb. The handle hold is probably
three feet and a half long, and he states that
it broke completely off, and that he knew
nothing about the defective condition of such
handle hold at the time. The plaintiff was
on his way home when the accident occurred.
There were eyewitnesses to the accident cor-
roborative of the theory of the plaintiff.

Defendant insisted, and offered some evi-
dence in support thereof, that the plaintiff
walked to the running board of the car for
the purpose of jumping off the car before it
had stopped, and in doing so threw too much
weight against the handle hold, causing it
to break. The defendant then offered to
show that plaintiff had on previous occasions

jumped off the car at that point, and in fact
was accustomed to jumping off there, offer-
ing such testimony upon the theory that it
would tend to show the intention of the plain-
tiff at the time he arose from his seat and
went to the running board of the car. Ob-
jection to this testimony was sustained, and
defendant duly excepted.

This presents the question of prime im-
portance on this appeal. The trial court
submitted the question of contributory negli-
gence on the part of plaintiff to the jury for
determination, and it is not insisted that un-
der the circumstances of this case the ques-
tion of contributory negligence was not one
for the jury. Watkins v. Elec. Co., 120 Ala.
147, 24 South. 392, 43 L. R. A. 297; Arm-
strong v. Montgomery St. Ry., 123 Ala. 233,
26 South. 349.

The question of admissibility of the testi-
mony as to the habits or previous custom of
a person injured in a suit of this character
where negligence is sought to be established
has given rise to much discussion as well
as contrariety of opinion. While the question
seems never to have been directly determined
by this court, yet we are of the opinion that
the following authorities from this state in-
dicate a leaning against the admissibility of
such testimony in cases of this character:
Warden v. L. & N. R. R. Co., 94 Ala. 277,
10 South. 276, 14 L. R. A. 552; Glass v. Mem-
phis, etc., R. R. Co., 94 Ala. 581, 10 South.
215; B. R. L. & P. Co. v. Selhorst, 165 Ala.
475, 51 South. 568; M. & C. R. R. Co. v.
Graham, 94 Ala. 545, 10 South. 283. See,
also, in this connection, Blackwell v. Hamil-
ton, 47 Ala. 470.

Some of the authorities holding the evi-
dence admissible confine the conclusion to
those cases where there were no eyewitnesses
to the accident, while others make no men-
tion of this distinction, holding the evidence
generally admissible, and still others holding
the evidence inadmissible without making
mention as to whether or not there were
eyewitnesses. Among the latter class may
be cited the cases of Peoria & Pekin Union
Ry. Co. v. Clayberg, 107 Ill. 644; L. & N. R.
R. Co. v. McClish, 115 Fed. 268, 53 C. C. A. 60.

The following cases represent the view that
the evidence is admissible, and make no dis-
tinction as to whether or not there were eye-
witnesses to the accident: Pittsburgh, etc.,
Co. v. McNeil (Ind. App.) 66 N. E. 777; Pres-
ton v. Hannibal & St. J. R. Co., 132 Mo. 111,
33 S. W. 783.

The authorities having bearing upon this
question may be found in the note to the case
of Zucker, Adm'r, v. Whitridge, Receiver, 41
L. R. A. (N. S.) 683. The Zucker Case is
from the Court of Appeals of New York, and
a question of very similar character to that
here involved was there treated in a very
carefully prepared opinion. The language
therein found so nearly accords with the

conclusion we have here reached that we take therefrom the following quotation, approving the same as applicable to the case here under review:

"The weight of authority seems to be against admitting evidence of general conduct under proven circumstances to show conduct of the same kind under similar circumstances on a particular occasion, when there were eyewitnesses of the occurrence, including the person injured, if he survived the accident. We are not now called upon to decide whether evidence of the habits of a decedent in crossing railroads is competent when there is no eyewitness of the event. In this case there were four witnesses who saw what happened, and described the conduct of the deceased as he walked to his death. A question of evidence, to some extent, is a question of sound policy in the administration of the law. Sometimes it is necessary to weigh the probative force of evidence offered, compare it with the practical inconvenience of enforcing a rule to admit it, and decide whether, as matter of good policy, it should be admitted. Uniform conduct under the same circumstances on many prior occasions may be relevant as tending somewhat to show like conduct under like circumstances on the occasion in question. All relevant evidence, however, is not competent. Hearsay, although relevant, is held incompetent from public policy, because there is safer and better evidence to establish the fact. Parol evidence to vary a written agreement is relevant, but incompetent, because sound policy requires that the writing should be presumed to express the final agreement of the parties. So, assuming the evidence in question to be relevant, I think it should be held incompetent under the circumstances, because its probative force does not outweigh the inconvenience of a multitude of collateral issues, not suggested by the pleadings, the trial of which would take much time, tend to create confusion, and do little good. As was said by Chief Justice Peters, in Chase v. Maine C. R. Co. [77 Me. 62, 52 Am. Rep. 744] supra: 'In many litigations, under such a test, there would arise a wager of character which would as unfairly settle the dispute as did formerly the wager of battle.' The rule of the average life is care, or else it would not long continue; yet the average man is conscious that he is not always careful; and hence habit on general occasions is uncertain evidence of care on a particular occasion. It is not enough of itself to establish the fact sought to be proved, and, at the most, simply bears upon the probability. Habit is an inference from many acts, each of which presents an issue to be tried, and necessarily involves direct, and naturally invites cross, examination. The circumstances surrounding each act present another issue, and thus many collateral issues would be involved which would not only consume much time, but would tend to distract the jury and lead them away from the main issue to be decided. From the want of previous notice, the other party would not be prepared to meet such evidence; and after all the testimony of this character was in, the fact would remain that, as no one is always careful, the subject of inquiry, although careful on many occasions, might have been careless on the occasion in question."

We likewise confine our conclusion to the particular case here presented, where there were eyewitnesses to the accident. We therefore conclude there was no error in sustaining the objection to this testimony.

We have examined the cases in this State relied upon by appellant (McDonald v. Montgomery St. Ry. Co., 110 Ala. 161, 20 South. 317; Birmingham Trust, etc., Co. v. Curry, 175 Ala. 373, 57 South. 962, Ann. Cas. 1914D, 81; Home Ins. Co. v. Adler, 71 Ala. 516; Maxwell v. Brown Shoe Co., 114 Ala. 304, 21 South. 1009; Ryall v. Marx, 50 Ala. 31; Loeb v. Flash, 65 Ala. 526), but we are of the opinion that these authorities do not at all militate against the conclusion we have here reached. The McDonald Case, supra, is strongly relied upon by counsel for appellant, but we think the facts of that case readily distinguish the same from the case here under review.

There are but two other questions in the case, which we do not consider need discussion. Suffice it to say they have been carefully considered in the consultation, and we find in them nothing calling for a reversal of the case.

The judgment of the court below will be accordingly affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.