MATTIE A. F. SAVAGE *vs.* RHODE ISLAND COMPANY.

JULY 2, 1907.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1)  *Master and Servant.  Negligence.  Running-Boards of Cars.*

Intestate entered employ of defendant the day before he was killed, and made three trips, with an experienced conductor, that day, and the next day took full charge of a car.

On the trip when he was killed the car was crowded, and passengers were standing on the running-board, which was down on the side next to the sidewalk, where the track was not far from a series of electric-light poles, and up on the side away from the sidewalk, in accordance with the rules of defendant.

Intestate on his way collecting fares, had to pass outside of a man standing on the running-board, and in so doing his head struck an electric light pole located beside the track, and he was knocked to the ground, and died shortly afterward.

The pole in question was somewhat nearer the track than others, and had been in that position all that summer, and probably for a number of years:—

*Held,* that, while a conductor would be justified, in the absence of special warning or actual knowledge, in assuming that he could safely stand upon and pass along the running-board without danger in the ordinary way, he would not be justified in assuming that he could at any time or place swing out to any distance he might find convenient for the purpose of passing passengers standing on the running-board.

(2)   *Presumptions of Due Care.   Evidence.*

*Held,* further, that the presumption of due care, and of ignorance of any extraordinary risk, which it is sometimes held exists in cases where no one saw the accident causing the death, and where there is no testimony to show any of the facts and circumstances surrounding the accident, as well as the presumption that deceased would not voluntarily expose himself to a known danger, contended for by plaintiff, are mere presumptions of law, and have no weight, and do not apply to cases where there is direct evidence upon the question; and the fact that the evidence is that of an employee of defendant does not show sufficient interest to warrant the jury in disregarding it.

(3)   *Common Carriers.   Speed of Car controlled by Conductor.*

*Held,* further, that the element of speed of the car was not properly one to be considered, except as bearing on the contributory negligence of intestate, since the speed was at all times subject to the control of the conductor.

(4)   *Uncontradicted Evidence, Weight of.*

*Held,* further, that request of defendant, to charge that if the evidence of a witness for the defence had not been refuted by any other testimony, nor impeached, nor his veracity questioned, the jury must accept his testimony as controlling in the matters concerning which he testified, should have been granted.

*Held,* further, that it appeared that the accident was due, not solely to the proximity of the pole to the car, but to the act of intestate in voluntarily placing himself in a position of more than ordinary danger.

TRESPASS ON THE CASE for negligence.   Heard on exceptions of defendant, and sustained.

PARKHURST, J.   This is an action brought under the statute
by the plaintiff as administratrix of the estate of William H.
Savage, and for the benefit of herself as his widow, to recover
damages for his death, alleged to have been due to the defend-
ant's negligence.   It was tried before a jury in the Superior
Court for Providence county, December 19, 20, and 21, 1906.
It appears by the testimony in the case that Savage, the plain-
tiff's intestate, a man twenty-four years old, had entered the
employ of the defendant as conductor, Saturday, July 18, 1903,
the day before he was killed, and was put on the line between
Providence and Crescent Park.   He made three round trips
with George L. Phillips, an experienced conductor, during the
afternoon and evening of that day, and the next day (Sun-
day) he took full charge of a car.

On the trip when he was killed he left Crescent Park with
his car, an open bloomer car, a little before six o'clock in the
evening.   The car was crowded, and men were standing on the
running-board.   Along Pawtucket avenue, in the vicinity of
the place of the accident, the track for cars coming toward
Providence was on the east side of the street next to the side-
walk, not far from a series of poles carrying electric-light wires.
According to the rules of the defendant company, the running-
board was down on the right side next to the sidewalk and the
poles, and on the left side the running-board was up and the
bar at the end of the seats down.

As the car was traveling in the neighborhood of Mr. Henry
Ide's house, which is on the west side of Pawtucket avenue, the
conductor, Savage, went along the running-board collecting
fares or giving out transfers, and had to pass outside of a man
standing on the running-board.   As he did so, his head collided
violently with an electric-light pole, belonging to the Narra-
gansett Electric Lighting Company, located beside the track,
and he was knocked to the ground.   When the car had been
brought to a stop two hundred feet or more beyond the pole,
several men went back and carried him into Mr. Ide's house.
He had one or two severe wounds on the right side of his head,
and died shortly afterwards without regaining consciousness.

The pole with which Savage collided was somewhat nearer

the track than other poles along that street. It had been in the same position at least all that summer, and apparently for a number of years, and it was enough nearer to the track than other poles in its vicinity so as to be the subject of special warning to the plaintiff's intestate to look out for it himself and to warn his passengers of it when they were upon the running-board.

The jury found a verdict for the plaintiff for $5,000. The defendant then filed a motion for a new trial on the grounds that the verdict was contrary to the evidence, and the weight thereof; that the verdict was contrary to the law, and that the amount of damages was excessive. This motion was overruled, and the defendant's exception noted. The case is now before this court on a bill of exceptions filed by the defendant, and allowed by the court, incorporating all the exceptions taken by the defendant throughout the case.

The main questions are:

1. Was the verdict so clearly against the evidence that a new trial should be granted by the Supreme Court on that ground?

2. Were the damages awarded so clearly excessive that a new trial should be granted on that ground?

3. Was the burden upon the defendant to prove that the deceased had notice of the dangerous proximity of the pole to the track, if that was an extraordinary risk, and not an obvious one, or was the burden upon the plaintiff to show that the deceased had no such notice?

4. Did the jury have the right to disbelieve the testimony of the witness Phillips, that he pointed out the pole to the deceased and warned him of the danger from it, or were they bound to accept his testimony as conclusive on that vital point in the case?

5. Was there any reversible error in the numerous exceptions, or any of them brought up by the bill of exceptions?

A careful reading of the record of testimony convinces us that the verdict was against the weight of the evidence.

As relating to the question whether the plaintiff was married to William H. Savage, and so entitled to sue for her own bene-

fit as his lawful widow, there was sufficient evidence to warrant the jury in finding for the plaintiff on that point.

(1)    On the question of contributory negligence, however, we are satisfied that the plaintiff has not proved that the deceased was in the exercise of due care at the time of the accident.

So far as the evidence introduced by the plaintiff is concerned, it does not appear that the deceased conductor, at the time he was on the running-board, took any precautions whatever, by looking ahead to see whether he could safely swing out to pass by a passenger standing upon the running-board at the time when he did so attempt to pass and was injured. It must have been known to him that there were poles and trees and similar obstructions all along the line of the road; and while he would be justified (in the absence of special warning or of actual knowledge) in assuming that he could safely stand and pass along the running-board without danger in the ordinary way, he would not be justified in assuming that he could at any time or place swing out to any distance he might find convenient for the purposes of passing passengers standing upon the running-board. If it became necessary, as it often is, so to swing out and pass, it would plainly be his duty to look ahead and see that he could pass safely in that manner. The testimony does not show that the pole in question was so near as to endanger passengers standing straight upon the running-board; in fact it shows the contrary, for it appears that there were several persons standing upon the running board at this time, none of whom were hurt, including the passenger around whom the deceased was passing at the time of the accident; and it also appears that no one had previously been hurt at that point, so far as the witness Phillips knew, who was the only witness called who had had long experience on this particular line. It therefore appears that the accident was not due solely to the proximity of the pole to the car, but to the act of the plaintiff's intestate in voluntarily placing himself in a position of more than ordinary danger, from which the simplest precaution would have saved him. There was also the positive testimony of the defendant's witness Phillips, that on the previous day, when said Phillips had the deceased under instruction, he had

warned the deceased as to the proximity of this particular pole, when he was passing along the running-board while the car was approaching the pole; and that the deceased so warned passed it in safety.   As the testimony of the witness Phillips is the subject of special attack on behalf of the plaintiff, it will be further considered hereafter.

The plaintiff also insisted, against objection by defendant, upon putting in evidence of the speed of the car at the time of the accident, showing by several witnesses an estimated speed of from fifteen to twenty-five miles per hour.   In making the the offer of this testimony, and in support of its admissibility, the plaintiff's attorney said (rec. p. 29): "The allegation is that it was running at a high rate of speed, and has bearing on contributory negligence or the negligence of the conductor in allowing himself to be hit.   It is quite material, I think, to consider whether the car was running at a low speed where he could easily protect himself, or whether it was running at a high speed where obstacles of the road could come upon him quickly."

The court allowed the testimony so offered to be put in.

(3)    The element of speed is not made a part of the allegations of the defendant's negligence in any count of the declaration; nor could it have been properly so made, because the speed of the car was subject to the control of the conductor; he had full right to regulate the speed of the car as he saw fit, to slow down or even to stop, if necessary, in order that he might safely collect his fares.   In the event of a very crowded car, with many people standing upon the running-board, in view of the danger of losing hold, or being jolted off the car while in motion, or in view of the danger of hitting obstructions near the rail in passing them, when it was necessary to pass around persons so standing, it might frequently be necessary to stop the car until fares could be safely collected, and the conductor would have a perfect right so to do.   The speed of the car must at all times be subject to the control of the conductor, both because of the duty to obey municipal ordinances relating to speed, and because it might often be necessary to lessen the speed as a matter of safety to the passengers as well as to the conductor himself

If the testimony as to speed was properly admissible at all, and was in any way an element in contributing to the accident, it was evidence of contributory negligence on the part of the conductor himself. We can see no other way in which such testimony throws any light upon the situation. It would seem that the plaintiff's attorney, and probably the court, had in mind the more common case of the passenger injured or killed by negligence involving a consideration of excessive or dangerous speed, when the passenger has, of course, no control of the speed; but in this case it is obvious that the question of speed has an entirely different bearing. As the testimony was offered and insisted on by the plaintiff, against objection, the plaintiff can not complain if the court makes the application of it to the question of contributory negligence, as suggested by the plaintiff in offering the testimony, even if, on the strict question of pleading, it would have been inadmissible. We shall consider this line of testimony further in passing upon the exceptions.

(2)    The plaintiff strenuously contends, however, that as the injured person died from his injury, and so can not give testimony as to what he did in the way of due care, or as to what knowledge he had or what instructions he received as to the particular danger from which the injury arose, it is as if no testimony had been given bearing upon the question either of contributory negligence or of assumed risk; and so the plaintiff further contends that she is entitled to that presumption of due care, and of ignorance of any extraordinary risk, which has been sometimes held to exist in cases where no one saw the accident causing the death, and where there is no testimony to show how it occurred or any of the facts and circumstances surrounding the accident.

Such cases as *Cassidy* v. *Angell,* 12 R. I. 447; *Bridges* v. *R. R. Co.,* L. R. 7 H. L. 213; *Cogdell* v. *Wilmington &c. R. Co.,* 132 N. C. 852; *Baltimore &c. R. R. Co.* v. *Landrigan,* 191 U. S. 461, 471, some of which are cited and relied upon by the plaintiff in support of this contention, all rest upon the ground that, the case being one of death from injury, there was no evidence either of due care, or want of due care, on the part of the de-

ceased, no evidence from any witness as to how the accident occurred, or as to the facts and circumstances surrounding it; in these cases it has been said there arises a presumption of due care on the part of the injured person, so that "in the absence of evidence to the contrary" the case may go to the jury, provided there is proof of negligence on the part of the defendant; and it has been expressly held by this court, in explaining the case of *Cassidy* v. *Angell, supra,* as follows: "All that was intended by the court in its decision in *Cassidy* v. *Angell,* was that in a case presenting the same facts the plaintiff was entitled to the benefit of a presumption that the deceased was in the exercise of the care of a person of ordinary prudence, nothing appearing to the contrary. The court did not intend to change, nor consider that it was changing, the rule, which has always been considered a settled rule in this State, that the burden of proving the exercise of due care rests on the plaintiff. Though the court hold the plaintiff entitled to the benefit of the presumption stated in such a case, yet if evidence is adduced by the defendant tending to rebut this presumption, the burden still rests on the plaintiff to satisfy the jury by a preponderance of the evidence that he was in the exercise of due care. The opinion was unfortunate in stating that the burden of proof in such case was shifted from the plaintiff to the defendant, when all that was intended was to give the plaintiff the benefit of the presumption." *Judge* v. *Narragansett E. L. Co.,* 21 R. I. 128, 132, reaffirmed in *Judge* v. *Narragansett E. L. Co.,* 23 R. I. 208, 211.

The cases distinctly show that such a presumption is a mere presumption of law, and has no weight, and so does not apply in cases where the testimony of eye-witnesses discloses the facts and circumstances of the accident, whether offered by the plaintiff or by the defendant.

The same has been held with regard to such a presumption in other jurisdictions. Thus in *C. B. & Q. R. R. Co.* v. *Van Patten,* 74 Ills. 91, at p. 94, the court says: "There was no room to indulge in presumptions of what the intestate did or did not do, for his acts were clearly and fully in proof before the jury.

Nevertheless, the court, by the fifth instruction given at the instance of the plaintiff, told the jury:

" ' The law presumes the deceased, in approaching the mill crossing, exercised proper care and prudence; and, unless the jury believe from the evidence, that the deceased did not exercise care and prudence in approaching said crossing, he cannot be regarded as guilty of negligence.'

"It may be, if there had been simply evidence of the defendant's negligence resulting in the injury complained of, and no evidence of what the intestate's conduct was, this instruction would have been unobjectionable. But in view of the evidence as it was, the tendency of the instruction was to mislead, and we doubt not it did mislead the jury. They must have understood it applied to the evidence before them, and, notwithstanding there was clear proof of the plaintiff's negligence, still it must be considered with reference to the legal presumption that he was not negligent. When there is clear and incontestable proof of a fact, no presumptions can be indulged except such as arise from the proof. How much, or whether, any evidence was sufficient, in the estimation of the jury, to overcome this legal presumption that the intestate was not negligent, under the peculiar form of the instruction, can, of course, only be conjectured. It may, however, be inferred, from their finding, that the presumption was of controlling importance, for it is difficult otherwise to reconcile the verdict with the evidence.

"The instruction should have been refused, and the giving of it was error."

To the same effect see *Schepers* v. *Union Depot Ry. Co.*, 126 Mo. 665, 670; *Reed* v. *Queen Anne's R. R. Co.*, 4 Penn. (Del.) 413, 419, 420; *Day* v. *Railroad*, 96 Me. 207, 215; *McLane* v. *Perkins*, 92 Me. 39; *Wiwirowski* v. *L. S. & M. S. Ry. Co.*, 124 N. Y. 420; *Chase* v. *Maine Cent. Ry. Co.*, 77 Me. 62.

The same rule has been frequently applied in railroad cases where stock has been killed by trains, and when statutes provide that the killing shall be *prima facie* evidence of negligence on the part of the railroad company. In these cases the presumption thus raised is treated as a mere presumption of law,

and has no weight as against direct evidence on the question of negligence. *Kentucky Central R. R. Co.* v. *Talbot*, 78 Ky. 621; *Volkman* v. *Chicago, St. P. &c. R. Co.*, 5 Dak. 69; *Huber* v. *Chicago, M. & St. P. Ry. Co.*, 6 Dak. 392.

So also in railroad fire cases, where a presumption arises, from the mere fact that the fire was shown to have been caused by sparks from a locomotive, that this was due to the defendant's negligence, such presumption was treated as a mere presumption of law, and of no weight as against the positive, direct, uncontradicted, and unimpeached testimony of the defendant's witnesses on the subject of the defendant's negligence. *Menominee River &c. Co.* v. *M. & N. R. Co.*, 91 Wis. 447; *Southern R. Co.* v. *Pace*, 114 Ga. 712; *Spaulding* v. *Chicago & N. Ry. Co.*, 33 Wis. 582, 591. As was well said by the court in this latter case, p. 591–2: "But the learned counsel for the plaintiff very ingeniously argue, that the presumption that the defendant's locomotives were not properly constructed and equipped (which, it was held on the former appeal, arises in a case where the fires complained of are communicated from them), has the force and effect of testimony in the case; and that the question whether the testimony introduced for the purpose of overcoming such presumption is sufficient for that purpose, is necessarily a question of fact to be determined by the jury. The argument would probably be a sound one, were this a presumption of fact. Its weight and force, and consequently the amount of proof essential to overcome it, would in such case be for the jury, and not for the court, to determine. But the presumption under consideration is clearly one of law, and is governed by an entirely different rule. Its weight and effect, and the amount and character of the proof necessary to overcome it, are questions for the court, and were determined by this court on the former appeal. In such cases, if there is a conflict of testimony, the jury must determine what facts are proved; but where, as in this case, there is no such conflict, and the testimony is clear and satisfactory against the presumption, it is the duty of the court to hold, as matter of law, that the presumption is overcome. If, instead of doing so, the court leaves it to the jury to determine the fact, it is error;

within the cases above cited, which will work a reversal of the judgment, if the party against whom it was committed was, or might have been, injured by it."

It is to be noted that in all of the above cases cited the presumption contended for does not amount to evidence, so as to warrant a case to be sent to a jury as upon a conflict of testimony, where there is no other conflict than that which arises between the mere presumption of law, on the one side, and the positive, direct, uncontradicted, and unimpeached testimony on the other; nor is it suggested in any of these cases that testimony of the character suggested above, even when given by employees of the defendant corporation, is so tainted with interest by reason of their employment as that it could be rejected by the jury, if it be fair, reasonable, and consistent in and of itself.

We are satisfied that the plaintiff has failed to prove that the defendant was guilty of negligence.

The gist of the declaration is that the defendant was guilty of negligence in maintaining its railroad so near to a pole of the Narragansett Electric Lighting Company that such pole was a danger to the plaintiff's intestate, while he was performing his duty as conductor, in passing back and forth upon the running-board, and that he was ignorant of the danger, and that the defendant neglected to instruct or warn him of this danger.

The danger from this pole, if any, was either an obvious risk, and so assumed by the deceased; or else it was non-obvious, or extraordinary, and if so it was a matter as to which the deceased was entitled to special warning and instruction from the defendant. And of course it is well settled that in the latter case the burden of proof is upon the defendant to show that proper warning and instruction was given.

The defendant has chosen to take the latter view, viz., that the proximity of this pole was a non-obvious, or extraordinary, risk, and so has put in evidence, and apparently all the evidence in its possession, to show that proper warning and instruction was given, by the witness George L. Phillips, who had charge of the deceased on the day previous to the accident, in "breaking him in," for three trips over this route, and who testified

positively and directly that he did warn the deceased as to the danger from the very pole at which the accident occurred, during the time the witness was so instructing the deceased.   This evidence was not contradicted or denied, nor was the witness impeached; nor is there anything, either in the testimony of this witness or in the facts and circumstances as described by other witnesses, to throw any doubt upon the truth of this testimony.   Nor do we think that the witness was so interested, by reason of his employment by the defendant, as to entitle the jury to reject or disregard his testimony.   On the contrary, we think the defendant has fully sustained the burden of proof required of it in this matter, and that the jury were not warranted in finding for the plaintiff upon this ground.

But the plaintiff claims that, inasmuch as the only other witness, the deceased, who knew exactly what instruction and warning was given him, is dead, the plaintiff is entitled to the benefit of a presumption, similar to the one already discussed, that the deceased would not voluntarily expose himself to a known danger, and that the instinct of self-preservation would have made him avoid it, if he knew of it; and therefore that as between this presumption and the testimony of Phillips there arises a conflict in the nature of a direct conflict of testimony as between opposing witnesses; that such conflict was and should have been submitted to the jury; that the jury was entitled to weigh the testimony, and to reject the testimony of Phillips, if they saw fit; and that having done so, the verdict can not be disturbed.   We have already discussed the question of the effect and weight of such presumption as against direct, positive, uncontradicted, and unimpeached testimony in considering the question of contributory negligence, and we are of the opinion that the presumption here contended for is of no more weight than there, and is a mere presumption of law which does not arise where there is evidence to the contrary.   See cases cited *supra*.

The attack by the plaintiff upon the testimony of the witness Phillips is entirely unwarranted.   He was the only person alive who knew the facts; it was necessary for the defendant to call him, as it was bound to sustain the burden of proof as

to the warning and instruction given; his testimony is reason-
able and consistent throughout, and is unshaken upon cross-
examination, is entirely uncontradicted and unimpeached, and
the jury were not warranted in disregarding it, as they must
have done.

The mere fact that this witness was an employee of the de-
fendant does not, in our opinion, show sufficient interest to
entitle the jury to disregard this testimony.

See *Kentucky Central R. R. Co.* v. *Talbot,* 78 Ky. 621, 623,
where the court, speaking of such testimony, says, on p. 623–4:
"It appears to us that the only safe and just rule in a case
arising under this statute is, that the railroad company should
be required, when in its power, to introduce as witnesses those
employees who, from the circumstances of the particular case,
would be presumed to know whether there had been any
negligence on the part of the company; and when unim-
peached such witness or witnesses testify that there was no
negligence, and the circumstances do not contradict them, the
law is for the defendant.   To hold otherwise would work mani-
fest injustice and oppression, and would be a discrimination
against one class of persons in favor of another whose rights of
property are no more sacred.

"In this case appellant could have done no more than was
done.   Every employee who could be presumed to know any-
thing in reference to the matter was introduced, and testified
in effect that there was no negligence.   So far as this record
shows, the witnesses are all unimpeached and unimpeachable,
and there are no circumstances in the case tending to contra-
dict the statements of these witnesses, as to the absence of
negligence," and cases cited following the above are to the
same effect.

It should also be noted that the pole in this case was not
erected by the defendant, and was not in its control; and the
case is almost identical with the case of *Hall* v. *Wakefield Ry.
Co.,* 178 Mass. 98, the only difference being that in the case at
bar the evidence showed that the deceased was instructed as
to the particular danger; while in the Hall case the conductor's

knowledge of the danger was inferred from the length of service and opportunity for observation.

In view of the foregoing we do not consider it necessary to pass upon the question of the damages.

As to the exceptions: In view of the foregoing, from which it appears that the plaintiff has failed to prove either due care on the part of the plaintiff's intestate or negligence on the part of the defendant, it seems unnecessary to discuss in minute detail the numerous exceptions relating to the admission and exclusion of testimony, except so far as it appears that such exceptions must be sustained. The most of the testimony admitted or excluded, noted in the exceptions, was either properly admitted or excluded, or the rulings in either event were harmless to the defendant; and these exceptions are overruled, except as shown below:

The testimony excepted to on pages 29, 30, and 34 of the record relating to the speed of the car at the time of the accident was immaterial and irrelevant, because the declaration no where makes speed an element of the defendant's negligence. It shed light upon the case only in relation to the contributory negligence of the deceased, as hereinbefore shown, and, so far as it went, was in favor of the defendant; but in the way in which it was offered and ruled in it was likely to lead to confusion in the minds of the jury, as it evidently confused the minds of the court and the counsel in the cause as to the proper application of the rules of law to the question of the defendant's negligence; and therefore these exceptions are sustained.

The court denied various requests made by the defendant to charge the jury as follows:

(4) "1. If the jury find that the testimony of the witness Phillips, offered by the defendant, has not been refuted by any other testimony, and has not in any way been impeached, and his veracity has not been questioned by any testimony, and that his reputation for veracity has not been impeached by any testimony, the jury must accept his testimony as the sole and controlling evidence in the matters concerning which he testified.

"2. If the jury find that the testimony of the witness Phillips, offered by the defendant, has not in any way been refuted, contradicted, or impeached by any testimony, that testimony must stand as controlling evidence upon the issue raised by such testimony, and the verdict of the jury must be for the defendant thereon."

"4. If the jury find that the deceased conductor, William H. Savage, was notified and warned of the danger incident to his employment as conductor upon the defendant's road, in the manner described by the witness Phillips in his testimony offered by the defendant, the verdict must be for the defendant.

"5. If the testimony of the witness Phillips, offered by the defendant, relative to the notice or warning to the deceased conductor, William H. Savage, concerning the danger to be apprehended from the pole in question in this case, has not been refuted, contradicted, or impeached by his own or by any other testimony, the jury must accept that testimony as the controlling testimony upon that issue, and the verdict must be for the defendant."

The court refused to charge the jury as requested, on the ground (rec. p. 169) that they had already been substantially so charged. We do not so find upon careful examination of the whole charge. We do find, however, that the court used this language on page 165: "Now, did he have notice? If he had notice, gentlemen, the company is not liable in this case, if they have proved it by a preponderance of evidence. On the one hand, you have got the testimony of this conductor. He says that he actually gave that notice. On the other hand, you have,—the conductor is dead. He can not testify. It comes down to that point, largely, to the question of the credibility of this conductor Phillips."

By this language, in our opinion, used in connection with the discussion of the credibility of the testimony of the witness Phillips, the court gave the jury an erroneous idea as to the weight of Phillips's testimony, and practically authorized them to ignore it, if they saw fit. The special requests preferred by the defendant were, in our opinion, correct, and should have

been given, and if given would have tended to clear up in the minds of the jury any misapprehension they might have had on this point.

We think the court below erred, therefore, in denying these requests, on the ground that they had been substantially given before, and that the jury were misled, by the instructions actually given, into ignoring the testimony of the witness Phillips, rather than led to give it its proper weight in the consideration of the case. These exceptions are therefore sustained.

The court also denied the following request, made by the defendant:

"7. The burden is upon the plaintiff, was at first and has never shifted to the defendant, to prove by a preponderance of evidence that the deceased conductor, William H. Savage, was ignorant of the danger from this pole."

There was testimony from which the jury could have found that the danger from this pole was a non-obvious and extraordinary risk, as to which the burden of proof of notice would plainly rest upon the defendant; and we think the jury had already been sufficiently and properly instructed upon this point.

The above instruction was properly refused, and the exception to such refusal is overruled.

Upon the whole case, therefore, the exceptions of the defendant are sustained (except as noted above), and the case is remitted to the Superior Court for a new trial.

*Gardner, Pirce & Thornley, Frank S. Arnold, and Davis G. Arnold,* for plaintiff.

*William W. Moss,* of counsel.

*Henry W. Hayes,* for defendant.