### RODENFELS, Exr. v GREAT EASTERN STAGES, Inc.

Ohio Appeals, 2nd Dist, Franklin Co

No 2961. Decided May 25, 1939

Knepper, White & Dempsey, Columbus, for Defendant-Appellant.

## OPINION

By HORNBECK, PJ.

This is an appeal on questions of law from a judgment of the Common Pleas Court for $15,000.00 in favor of the plaintiff against the defendant. We refer to the parties as plaintiff and defendant.

The action was for damages for the wrongful death of plaintiff's decedent, George Herman Rodenfels. The cause went to trial on issues joined on the second amended petition, the answer of defendant and the reply. When the issues were drawn, L. D. Quick, also known as L. D. Finch, was a party defendant. Following the open statements of counsel, defendant moved the court for an order requiring the plaintiff to elect as against which defendant she would proceed. This motion was at the time overruled but at the conclusion of the whole case plaintiff was required to elect and chose to proceed against the defendant carried in the caption.

Plaintiff avers her capacity as administratrix, sets forth the names of next of kin of the plaintiff's decedent, alleges that the defendant, Great Eastern Stages, Inc., is a corporation engaged in the business of operating busses for the transportation of people and property; that plaintiff's decedent was on the 7th of January, 1934, at about 8:30 P. M. riding in the rear seat of a certain motor vehicle operated by

Hamilton, Kramer & Wiles, Columbus, for Plaintiff-Appellee.

Merton F. Pinney, Delaware, Ohio, and moving in a northwardly direction on State Route 23 and had arrived at a point about ½ mile south of Delaware, Ohio, when the automobile collided with the bus then and there operated by defendant, causing injuries and death to plaintiff's decedent, George Herman Rodenfels.

Nine specifications of negligence are set forth against the defendant which it is averred directly and proximately caused the injuries and death of plaintiff's decedent.

The answer of defendant, after admitting the capacity and qualifications of the administratrix and that the defendant is a corporation organized under the laws of the state of Delaware; that Rt. 23 is a state highway connecting the city of Columbus and Delaware, Ohio; that plaintiff's decedent on the 7th day of January, 1934, was riding in a certain motor vehicle operated by Merton Pinney of Delaware, Ohio, and proceeding in a northwardly direction on St. Route 23 and was involved in a collision at a point about one-half mile south of Delaware, Ohio; that subsequent to the said collision plaintiff's decedent died, denied generally the allegations of the second amended petition. Defendant further avers that the collision and resulting damages, if any, were caused solely, proximately, directly and entirely by the carelessness and negligence of the said Merton Pinney. The reply was a denial of the affirmative averments of the answer. When we refer to the second amended petition hereafter it will be denominated "petition".

Trial was had by jury. Defendant made a motion for directed verdict at the conclusion of plaintiff's case, at the end of the whole case, after verdict moved for judgment on answers to interrogatories, for a new trial and for judgment veredicto non obstante, all of which motions were overruled and judgment entered on the verdict. The trial judge submitted but three of the nine specifications of negligence, Numbers 1, 2 and 3 as set forth in the petition as follows:

1. That the defendant parked its bus at the bottom of a depression, with its left wheels on or about the center of the highway and permitted it to remain in that position, obstructing traffic.

2. That defendant obstructed the east half of said highway on the lane for northbound traffic and neglected to maintain on the rear of the bus lights visible for a distance of 200 feet.

3. That defendant failed and neglected to post any signals, lights, flares or warnings, although on the night the accident occurred it was dark and misty and visibility was poor.

At the request of defendant the trial judge submitted and the jury answered certain interrogatories as follows:

"(1) Do you find from the evidence that on the night of January 7, 1934 Myrt Pinney's vision of the roadway straight ahead of him was interfered with by the headlights of approaching cars while he was traveling between the top of the grade at the south and a point about 18 feet south of the bus? Answer: Yes".

"(2) If you find from the evidence that on the night of January 7, 1934 Myrt Pinney's vision of the roadway straight ahead of him was interfered with by the headlights of approaching southbound cars at any point between the top of the grade at the south and a point about 18 feet south of the bus, how many feet south of the bus was the Ford automobile, driven by Pinney, when Pinney's vision was first so interferred with? Answer: 400 feet."

"(3) If you find from the evidence that on the night of January 7, 1934 Myrt Pinney's vision of the roadway straight ahead of him was interfered with by the headlights of approaching southbound cars at any point between the top of the grade at the south and a point about 18 feet south of the bus, would the Ford automobile, driven by Pinney, have collided with the bus if Pinney had stopped the Ford automobile when his vision was first so interfered with?

Answer: No."

"(4) Was the Ford automobile, on the night of January 7, 1934, equipped with headlights that would disclose the bus to Pinney when the Ford automobile was 200 feet south of the bus?

Answer: Yes."

"(5) How many feet south of the bus was the Ford automobile when Myrt Pinney first saw the bus?

Answer: 18 feet."

"(6) When Myrt Pinney saw the bus in front of him, could he have stopped the Ford automobile in time to avoid a collision with the bus?

Answer: No."

There are 21 assignments of error filed in this court by the defendant which are presented in its brief under ten headings. We are following the assignments as classified in the first brief of counsel for the defendant and set them out only as we consider them.

It appears that plaintiff's decedent was a passenger in the rear seat of a Ford automobile driven by Merton F. Pinney, Sheriff of Delaware County. Vern T. Mitchell, a brother-in-law of the Sheriff, was also riding in the rear seat. The defendant by its operator, L. D. Quick, was, on the night of the accident, driving one of its passenger coaches from Delaware to Cleveland for the purpose of repair. The night was foggy and visibility was poor. The extent to which it interfered with driving was in dispute. Traffic was heavy on State Route 23 at and near the place of the accident. The defendant's driver, because of mechanical difficulty, had stopped its bus at the place where the collision occurred. The time that it remained standing, fixed at from one to fifteen minutes, in or along the road, is likewise in controversy. The bus is located variously from a point which would put it a few inches to the left of its center of the highway to a place entirely off the highway and to the right thereof.

Rodenfels and Mitchell were both killed in the collision. Thereafter Mitchell's administratrix instituted her action against the defendant herein for damages for his death in the Common Pleas Court of Delaware County resulting in a verdict and judgment for the plaintiff. In that action the following interrogatories were propounded and answers made by the jury:

"(1) Do you find from the evidence that on the night of January 7, 1934, Mert Pinney's vision was interferred with by the headlights of approaching cars while he was driving between the top of the grade at the south and a point about 18 feet south of the bus?

Answer: No."

"(3) Was the Ford automobile, on the night of Jan. 7, 1934, equipped with headlights that would show the bus 200 feet ahead of the Ford automobile?

Answer: Yes."

"(4) How many feet south of the bus was the Ford automobile when Mert Pinney first saw the bus?

Answer: 50 feet."

"(5) When Mert Pinney saw the bus in front of him, could he have stopped the Ford automobile in time to avoid a collision with the bus?

Answer: No."

Rodenfels was a guest of Pinney under the law. The conditions under which the accident occurred precluded any charge of negligence against Rodenfels and none was submitted to the jury. The negligence, if any, of Pinney, the driver of the Ford, could not be imputed to Rodenfels, so that, if defendant's driver and Pinney were both negligent and their negligence combining or concurring proximately caused Rodenfels' death, plaintiff may recover. If defendant was not negligent or; if negligent, its negligence was not a proximate cause of Rodenfels' death or, if the negligence of Pinney was the sole proximate cause of Rodenfels' death, plaintiff may not recover.

The first two assignments of error in this case may be grouped and are as follows:

"(1) The trial court, on the motion under §11420-18 GC, should have rendered final judgment for the defendant,

because the special findings establish that the negligence per se of Pinney was the **sole proximate cause** of the collision and the death of Rodenfels."

"(2) Upon the evidence received upon the trial, the defendant was entitled by law to a judgment in its favor:

(a) Because the defendant was not negligent.

(b) Because the negligence of Pinney was the **sole proximate cause** of the collision and death of Rodenfels."

Forty-eight pages of defendant's opening brief, the greater portion of the fifty-five pages of plaintiff's answering brief, all of defendant's reply brief are devoted to argument and citation of authorities directed to these two assignments of error.

There is substantial support for the plaintiff's claim upon each and all of the issues drawn upon the three specifications of negligence which the trial judge submitted to the jury.

One of the two principal questions urged in the Mitchell case in Delaware County is that raised by the above assignments of error in this case. The answers to the interrogatories were substantially the same there as in this case. The court, opinion by Judge Sherick, which is before us, considered and discussed the claim of defendant that defendant's negligence, if any, was not a proximate cause of the collision and held against this contention. It would serve no good purpose to add to the lengthy discussion which is found in the briefs of counsel of the parties. To do so would make no substantial contribution to the law of the land on the subject. Every case is decided upon its own facts. They are as varied as human activity. Nor is there uniformity of legal pronouncement on the question by the courts of the various states of the Union. The adjudications outside of Ohio upon the questions of condition and proximate causation can not be reconciled. It certainly would be of no advantage to the litigants for this court to undertake an extended consideration, dissertation and differentiation of the mass of cases cited and discussed in the briefs.

We have carefully read the opinion in the Mitchell case, supra, and further facts set out in **Mitchell v Industrial Commission, 57 Oh Ap 319,** and find that the facts adduced were so similar to those presented in this case as to make the legal questions for determination, to all intents and purposes, the same on the assignment of error now under consideration. It is urged that the Mitchell case was not given mature consideration. It is true that the opinion was released within a few days after the cause was submitted. This fact alone does not support the claim of immature consideration.

We are in accord with the judgment of the Court of Appeals of the Fifth District and the reasons therein set forth.

We are satisfied that in the instant case the situation created by defendant's driver was not a condition which merely made possible the collision and resultant injury and death of plaintiff's decedent, nor a remote cause, but could properly be found to be a direct and proximate cause of plaintiff's injuries and death.

If defendant had instituted an action against Mr. Pinney for property damage to the truck, no court could properly say upon the evidence or the general verdict and answers to the interrogatories that defendant's driver would not be chargeable with contributory nigligence.

We find no irreconcilable conflict between the general verdict and the answers to the interrogatories. They do not require the conclusion either that Pinney's negligence was the sole cause of the collision, or that defendant's driver was not negligent nor that his negligence was not a contributing proximate cause of Rodenfels' death.

The general verdict of necessity carries findings that the defendant was negligent in one of the particulars alleged and that such negligence was a proximate cause of the injury and death of plaintiff's decedent. Unless the an-

swers to the special interrogatories are so inconsistent with these findings of the jury as that they can not stand the general verdict must be supported.

If the answer to interrogatory No. 4, which is to effect that the Ford automobile on the night of January 7, 1934, was equipped with headlights that would disclose the bus to Pinney when the Ford automobile was 200 feet south of the bus, requires the conclusion that at all times from a distance of 200 feet from the bus Pinney saw, or in the exercise of ordinary care should have seen, the bus then there is considerable merit in the claim that the negligence of defendant's driver was a remote and not a proximate cause of the collision.

The interrogatory to the jury which would have elicited specific information which would be helpful to the trial judge and to reviewing courts would have been: At what distance on the night of the accident did Pinney see or in the exercise of ordinary care should he have seen the bus of defendant?

The answer to interrogatory No. 1 discloses that Pinney's vision of the roadway straight ahead of him was interfered with by the headlights of approaching cars while he was traveling from the top of the grade to the south and until he reached a place about 18 feet from the bus. Interrogatory No. 2 discloses that Pinney's vision was first interfered with when he was 400 feet from the bus and answer to interrogatory No. 5 determines that Pinney did not see the bus until he was 18 feet from it. In view of the answers to interrogatories Nos. 1 and 2 it definitely appears that the jury recognized that Pinney's vision was obstructed as he approached the bus and that he did not see it until he was 18 feet away.

Does the answer then to interrogatory No. 4 compel the conclusion that it was a finding in effect that although Pinney could or did see the bus for 200 feet before it was struck that he drove on without regard to that fact and into and against the bus? If so, the answer to the interrogatory is inconsistent with the answer to all the other queries and to the general verdict. It should be the purpose of the court to reconcile these answers if it can be done. With this purpose in mind and in the light of the possible inconsistencies what is the meaning of the answer to interrogatory No. 4?

It is our judgment that it is an expression of the jury that the Ford was equipped with headlights that, independent of the interference with the vision of Pinney as found in answers Nos. 1 and 2 and possibly from the fog, would have lighted the road 200 feet ahead and disclosed the bus. It is true there is nothing in the answers respecting the state of visibility because of the condition of the night but certainly the fact that this is not made the subject of inquiry does not preclude the conclusion that the jury may have so found.

It is reasonable to assume that Pinney was, on the night in question, exercising his natural instinct for self-preservation as he approached the bus. If the answer to interrogatory No. 4 requires the construction placed upon it by defense counsel then his conduct was nothing short of wanton, to say the least, and he plunged into the bus after a full appreciation for a distance of 200 feet that it was stationary in the highway and in his path. If the answer to interrogatory No. 4 be construed to mean that he had normal lights then the jury may have found that he was negligent in violating the assured clear distance ahead statute, or, in failing to exercise ordinary care but notwithstanding his negligence, the defendant was also negligent in leaving the bus in the traveled portion of the highway unlighted or without proper warnings and that such conduct directly contributed to the result wherein plaintiff's decedent was killed. This seems a reasonable conclusion of the whole matter consistent with the general verdict and with the answers to all of the interrogatories.

The trial court erred in giving to the jury a special charge, submitted by the

plaintiff, which assumed negligence of the defendant.

The charge under consideration was special instruction No. 2, given at the request of plaintiff before argument,

"I charge you that under the law the plaintiff's decedent, George Herman Rodenfels, not being the driver of the automobile in which he was riding, would not be charged with the negligence, if any, of the driver, Mert Pinney, even should you find that Mert Pinney was guilty of some negligence. If you further find that the accident was proximately caused by the concurrent negligence of the defendant company and Mert Pinney, then your verdict should be for the plaintiff."

Supporting the claim that the charge assumed the negligence of the defendant we are cited to **Plotkin v Meeks, 131 Oh St 493**, 2nd syllabus:

"A special charge to the jury requested by a party to an action, which is based on the assumption that a material fact exists in the case, but which in reality is in dispute between the parties, is properly refused. * * *"

The charge under consideration in the cited case was,

"If you find from the evidence that the negligence of the plaintiff either directly caused or directly contributed in the slightest degree to cause the injury of which she complains, your verdict must be for the defendant."

Plotkin v Meeks in its consideration by the court presents an interesting situation. The writer of the opinion in the very first sentence thereof asserts that the plaintiff in error conceded that the charge "assumed the existence of **contributory negligence** on the part of the defendant in error". (Emphasis ours). Proceeding upon this assumption the majority held the charge to be improper. The dissent by three members of the court found that the language of the requested instruction did not assume the existence of contributory negligence. It seems to us that counsel for the plaintiff in error conceded too much and thereby may have prevented a consideration of the charge upon a broader basis. Inasmuch as counsel yielded the question urged by the minority, the party whom she represented was in no position to complain of the determination of the majority. In this unusual situation we apply the syllabus only of Plotkin v Meeks, to the charge in the instant case. So doing, it is our judgment that the special charge in this case was not objectionable and did not assume the negligence of the defendant. It was essential under reasonable interpretation of the instruction that the jury find first, negligence of the defendant and second, that it concurred to proximately cause plaintiff's decedent's injuries. How can it be said that the jury could find, as the charge required, that the accident was proximately caused by the concurrent negligence of the defendant company and Pinney unless and until it had found negligence on the part of the defendant?

Special charges are almost without exception employed to present the law on a single proposition. So in the charge under consideration. It had to do with concurrent negligence. The mere fact that it did not expressly state of what the negligence of defendant consisted, that it must be proven and the burden of proof, requires no assumption one way or another. Other special charges and the general charge leave no doubt as to the obligation upon the plaintiff to prove the negligence of the defendant as one of the prerequisites to her recovery.

The trial court erred in refusing to charge the jury that the defendant was presumed to be obeying the law unless plaintiff proved the contrary by a preponderance of the evidence.

The charges are as follows:

A. "I charge you that the law presumes that at the time when this accident occurred the defendant had attached to the bus a light or lights, the rays of which were visible at least two hundred (200) feet from the rear of the bus. Unless you find that the plaintiff has proved by the greater weight of the evidence that such lights were not attached to the bus at the time when this accident occurred, then I charge you that the defendant did not violate §12614-3 GC, in the lighting of the rear of its bus and was not negligent in that regard."

B. "I charge you that the law presumes that at the time when this accident occurred the bus was stopped with its front and rear right wheels within one foot of the right side of the improved portion of the road and not obstructing a free passage of the road. Unless you find that the plaintiff has proved by the greater weight of the evidence that the bus was not stopped in such a position at the time when the accident occurred, then I charge you that the defendant did not violate §6310-27 GC in the stopping and parking of the bus and was not negligent in that regard."

These instructions were offered upon the hypothesis that there is a presumption that every man obeys the law and therefore the jury should indulge this presumption to say that defendant's driver was free from the imputation of the violation of either and both of the Sections of the Code set forth in the claims of negligence.

A presumption has been defined as "an inference of the existence or non-existence of some fact which courts or juries are required or permitted to draw from the proof of other facts". 22 C. J. 82. "Presumptions must be based on some necessity and the court will not go into the domain of presumptions where direct proof can be obtained." 22 C. J. 83.

The burden upon the plaintiff in this case was defined both by a special charge of defendant and by the general charge. This burden of proof by a preponderance of the evidence of the negligence of the defendant proximately causing the death of plaintiff's decedent was met when upon the evidence adduced the plaintiff had produced the greater amount thereof in convincing power. When the plaintiff had met this burden she did not have to do more and also overcome a presumption. The special charges after setting out specifically that the law presumes that at the time of the accident defendant's driver was not violating either section in any particular, then states

"Unless you find that the plaintiff has proved by the greater weight of evidence that such lights were not attached at the time when this accident occurred as provided in §12614-3, GC, or that the bus was not stopped in such position at the time when the accident occurred as prohibited in §6310-27, GC", then the defendant was not negligent in either regard.

The infirmity in these charges is in the application of the term "greater weight of evidence" after charging the presumption of non-violation of the statute. It has the effect of creating the impression that the greater weight of the evidence means not only the greater weight of all the evidence by both parties adduced in the trial but in addition thereto the overcoming of the presumption. This is not the law as we understand it.

The question is well considered and ably discussed in **Pletcher v Bodle, Admr., 13 Abs 708.** The court had refused to give the following special charge,

"I charge you as a matter of law that it is the presumption of law that every man obeys the law, and the presumption in this case is that the defendant was traveling at a lawful rate of speed and on the proper side of the highway. This presumption is in itself a species of evidence and it shall prevail and control your deliberations until it is shown by preponderance of the evidence

that the defendant was guilty of negligence."

The court said, page 710,

"This request was properly refused because the presumption referred to is not such a presumption as is 'species of evidence'; an evidentiary presumption is an inference of the existence or non-existence of some fact which courts or juries are required or permitted to draw from proof of other facts; a presumption of innocence * * * or of obedience to law is not a species of evidence but is simply a rule of administration which places the burden of proof upon the party alleging * * * the violation of law. In a civil action the office of a presumption that one has obeyed the law is to cast the burden of proving otherwise upon the party claiming that the law was not obeyed; the presumption sustains the burden of evidence until conflicting facts on the point are shown, and where evidence of facts is introduced, the presumption is functus officio and drops out of sight (Beeman v Puget Sound T. Co., 79 Wash. 137; Peters v Lohr, 124 N. W. 853; Savage v Rhode Island Co., 67 Atl. 633), and it is then not error to refuse to charge the presumption."

This statement of the court in its opinion is carried into three propositions of the syllabi of the case.

To like effect are other cases cited in briefs of counsel for plaintiff, **Ault v Hall, 119 Oh St 422, 428; Petry v Mutschman, 34 O. L. R. 212, 216, 218; Trubey v Betz, 49 Oh Ap 308, 312; 17 O. Jur. 83,** and the rule is well set forth in 2 Blashfield's Cyclopedia of Automobile Law, 1628,

"In the absence of any evidence upon the point, it will be presumed that a driver of an automobile has complied with traffic regulations."

The trial court erred in refusing defendant's special charge "H" and in its general charge with reference to signals, lights, flares and warnings.

The trial court erred in refusing to sustain a motion of the defendant to strike from the record all the testimony in the case relating to the presence or absence of flares, signals, lights or warnings other than as required by the General Code of Ohio.

Defendant's special charge "H" was to effect that the defendant was under no duty to post signals, lights, flares or warnings or to give any notice or warning of the position of the bus in the highway other than provided by §§12614-3, 12631-1, GC. The court upon this question in the general charge said that although there was no specific statutory provision requiring the posting of signals, lights, flares or warnings if the jury found that in the exercise of ordinary care defendant's agent should have posted them it might be charged with negligence in the failure so to do, but that, if ordinary care did not require such action then negligence as to such specifications was not proven.

This case presents facts considerably different from those ordinarily appearing in motor vehicle collisions. Defendant is a public carrier, operating a line of passenger busses in the State of Ohio and it develops in the record that flares, fuses and other equipment required to be carried by such carriers were in the bus involved in the accident. The bus was not, upon the trip being made at the time of the collision, in the regular carrier service between designated terminals. Although counsel for plaintiff insisted that the operation of the bus was subject to the rules and regulations of the Public Utilities Commission and as a matter of law it was held to the obeyance of such rules and thereby compelled to place warnings to the front and rear of the disabled bus, the trial judge refused to accept this theory of the case but did charge as hereinbefore indicated.

What may be required in the exercise of ordinary care will vary according to the facts and circumstances appearing. Ordinarily the operator of a motor vehicle, if required to stop in the road, would have no equipment whereby he

could set flares to warn the traveling public, and therefore a specification of negligence in his failing to do so would be of no effect. But if a motorist is required to stop his car in the traveled portion of the highway in the night season, and it is insufficiently lighted, and has at hand equipment or devices which would serve as a better and more effective warning to vehicles approaching from either direction, it might be said that in the exercise of ordinary care it was his obligation to utilize these added warnings. It is not at all unusual in actions for damages growing out of negligence cases to aver a violation of Safety Statutes, Police Regulations as well as the Common Law obligation, all relating to the same general subject matter.

In any event in this case if the jury found, as it had a right under the evidence to find, that the rear of the bus was ineffectively and insufficiently lighted as it stood in the highway and that defendant's driver left it standing in the road for a considerable period of time it may properly have determined that the exercise of ordinary care required it to adopt other precautionary measures as warnings of the presence of the bus which would include the placing of flares or fuses. In the situation presented we are satisfied that the specification of negligence respecting the failure of defendant to place flares, etc., was a complete and proper charge and that the admission of testimony respecting it was not erroneous and the general instructions of the court on this subject matter were appropriate and sound.

## ERRORS IN THE ADMISSION AND REJECTION OF EVIDENCE AND MISCONDUCT OF COUNSEL.

There is some general observation respecting the claim of misconduct of counsel to which we give no consideration. Specifically our attention is directed to pages 271, 272, 273 and 274 of the Bill which presents a portion of the direct examination of Mr. Cronin, a witness on behalf of the plaintiff. It appears that substantially all of the subject matter found on these pages relates to an attempt of counsel for the plaintiff to show that the defendant had a certificated route from Columbus to Cleveland and that it might have been operating its service between said cities on the night of the collision. The trial court refused to permit questions intended to elicit such information and struck from the record such testimony as had been offered in the matter.

We find nothing prejudicial in the questions propounded by counsel, the method of putting them nor in the answers insofar as counsel caused them to be made before the ruling of the court excluding them. Without respect to the theory of plaintiff or the anticipation of proof respecting the operation of defendant's bus at the time and place under consideration she was unable to establish in the view of the trial judge that it was amenable to the Rules of the Public Utilities Commission with which plaintiff sought to charge it, but plaintiff had the right to try to prove her case. It was obvious that the general business of defendant was the operation of motor bus lines on certificated routes between designated cities but on the night in question it was not so operating. We are convinced that nothing which was developed in the testimony, which was stricken, was prejudicial nor was the questioning of counsel such as to constitute misconduct.

The record discloses that the court was liberal in permitting more than one counsel for each party to interpolate certain questions, objections and observations which always makes for disorder and tends to disturb that equanimity which should attend the orderly presentation of a law suit. Nor do we find that counsel for the plaintiff is chargeable with such conduct as to heckling of defendant's attorneys, continual talk or other acts which would require us to stamp it as prejudicial to the cause of defendant. There are many places in the record where counsel for both parties were prone to make

aside remarks and at times became somewhat personal in their observations. This, of course, is unfortunate but not unusual and the best that any trial judge can do it to keep it to a minimum. The judge in this case kept the proceedings well in hand and the record is not such as to raise the slightest concern on the part of this court respecting the fairness of the presentation of the case by both sides.

The verdict of the jury was not rendered on the law and the evidence but was excessive and was the result of bias, sympathy, passion and prejudice.

We do not find this assignment of error well made upon any ground therein asserted.

The trial court erred in refusing to sustain the motion of the defendant to require the plaintiff to elect as against which defendant she would proceed.

After the opening statement of counsel defendants and each of them moved that the court require the plaintiff to elect as against which of the defendants she will proceed, the ground of the motion being that the defendant, Quick, was the agent or servant of the defendant, Great Eastern Stages, Inc., and that as such can not properly be joined. Later, during the re-direct examination of Mr. Pinney, this motion was renewed. Both of these motions were overruled but at the conclusion of the plaintiff's case in chief the court sustained the motion to require plaintiff to elect and plaintiff elected to proceed against the defendant, Great Eastern Stages, Inc.

It is the claim of the defendant that by failure of the court to require plaintiff to elect as to the defendant against which she would proceed certain testimony of Quick was admitted, which was prejudicial to defendant, Great Eastern Stages, Inc. We have carefully examined all the testimony which was admitted by the court which would come within the purview of this assignment of error. In each and every instance the court limited this testimony in its application to defendant, Quick. None of it was of such character as to be prejudicial by its mere statement to defendant, Great Eastern Stages, Inc.

If it be granted that the court erred in not requiring the plaintiff to elect upon either of the first two motions made for that purpose, we would not find such action prejudicially erroneous.

We do not have the opening statement of counsel but upon the statement for defendant made in conjunction with the motion to elect after the opening statement of counsel, we can not hold that the court erred in overruling the motion. It was proper to give wide latitude to the plaintiff in the development of his proof as it might affect any issue drawn by the pleadings, not only as to the ownership and operation of the bus but as to the relationship of Quick to Great Stages, Inc., if that of master and servant whether or not he was at the time of the collision in the relationship of servant and about his master's business.

We believe the rule that motions to elect should be sustained when the misjoinder of defendants first clearly appears is sound as announced in the cited case of **Sylvania Development Company v Start, 25 Oh Ap 411.** However, the practice ordinarily followed is that the election is required at the conclusion of plaintiff's case as was done in **French v Construction Company, 76 Oh St 509.** It is always safe procedure for a trial judge to postpone the order of election until the state of the record is such that there can be no other alternative than to sustain the motion.

The closest question on the record arises upon the weight of the evidence which was not made an assignment of error and is only touched in the brief of appellant.

There was an unusual and exceptional amount of testimony to the effect that defendant's employee exercised due care in the emergency presented.

We would not, however, say that the jury had not the right to resolve the conflicting evidence in favor of the plaintiff.

The judgment will be affirmed.

GEIGER & BARNES, JJ., concur.

**APPLICATION FOR REHEARING**

BY THE COURT:

The application is extended, but further discussion of the assignments of error would serve no good purpose. We undertook to consider and discuss them in our original opinion. Some objection is made to our observation to the effect that the weight of the evidence was not assigned as error and it is possible that we were mistaken in this observation. However, it is immaterial because we gave consideration and so indicated of this assigned error and expressed ourselves in respect thereto. P. 21, opinion.

Counsel for the appellant has settled convictions on the matters presented in the original briefs and reiterated and urged with much fervor in the application, and is slightly inordinate in comparitive illustration at pages 13, 14 and 15 thereof. It so happens that this court has a different viewpoint of the law. If we have laid down any erroneous principles of law as urged by counsel, it is not the result of any hasty consideration of the questions presented and comes after extended and mature attention to all of them.

Application for rehearing denied.

HORNBECK, PJ., GEIGER & BARNES, JJ., concur.